IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 3, 2002

## STATE OF TENNESSEE v. KENDRICK F. LOVE

**Direct Appeal from the Circuit Court for Giles County**
**No. 9669      Robert L. Jones, Judge**

_____

**No. M2002-00126-CCA-R3-CD - Filed February 18, 2003**

Defendant, Kendrick F. Love, was indicted by the Giles County Grand Jury on four counts of delivery of cocaine and four counts of the sale of cocaine, all Class B felonies. Defendant was convicted by a jury of his peers of facilitation of the sale of cocaine, facilitation of the delivery of cocaine, three counts of the sale of cocaine, and three counts of delivery of cocaine. Defendant received a total effective sentence of twenty-eight years as a Range II multiple offender. On appeal, Defendant argues that his sentence is excessive and that the trial court erred in denying his motion to sever the offenses. After a careful review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

William M. Harris, Lawrenceburg, Tennessee, for the appellant, Kendrick F. Love.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; Michel T. Bottoms, District Attorney General; Richard H. Dunavant, Jr., Assistant District Attorney General; and Patrick Butler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Three of the transactions occurred in September of 1999, and the fourth occurred in April of 2000. The record reflects that on September 9, 1999, police officer Irvin Murr, an undercover narcotics agent for the Giles County Sheriff's Department, arranged a meeting with Scottie Holt and Immanuel Harney to purchase an ounce of "crack" cocaine. Officer Murr drove to Mr. Harney's house, where he picked up Mr. Harney and Mr. Holt. Mr. Harney contacted Defendant, and Officer Murr drove to a location where they picked up Defendant. Defendant told Officer Murr to drive to Pulaski, Tennessee, where he dropped Defendant off to get the cocaine. Defendant instructed Officer Murr to circle the block and pick him up again at that same location.

Officer Murr was circling the block for a second time when he saw Defendant in another vehicle driving in the opposite direction. He turned around and followed Defendant into a parking lot. Defendant approached Officer Murr's vehicle and handed Scottie Holt, who was sitting in the passenger seat, a plastic bag containing a solid block of cocaine. Mr. Holt handed the cocaine to Officer Murr. Officer Murr gave Defendant $1,200. Defendant walked back over to the other vehicle and briefly spoke to the driver. He then got back into Officer Murr's vehicle, and Officer Murr drove him to Skeeter's Place, a bar in Elkton, where he dropped him off. Officer Murr testified that he argued over the price of the cocaine with Defendant, and Defendant told him that if he continued to buy cocaine from him and showed him that he was a regular customer, he would lower the price.

On September 17, 1999, Officer Murr again met with Mr. Harney to purchase half an ounce of "crack" cocaine. Officer Murr drove to Mr. Harney's residence and picked him up. They were driving to Prospect, Tennessee, when they met Defendant driving in the opposite direction. They stopped at a gas station, and Defendant got into Officer Murr's car and took out a plastic bag containing several rocks of cocaine. Defendant offered to sell thirty rocks to Officer Murr for $300. Officer Murr purchased the cocaine.

On September 23, 1999, Officer Murr attempted to contact Defendant by phone, but he was unsuccessful. He later met Defendant at a market in Elkton, Tennessee. Officer Murr told Defendant that he wanted to purchase an ounce of cocaine. Officer Murr drove Defendant to Pulaski, Tennessee and dropped him off at the same location where he had dropped him off on September 9, 1999. Officer Murr later picked up Defendant, and Defendant handed him a plastic bag containing both powder and solid forms of cocaine, for which Officer Murr paid Defendant $1,200.

On April 26, 2000, Officer Murr contacted Tammy Holt and told her that he wanted to purchase an "eightball" of cocaine. Officer Murr drove to Ms. Holt's home. When he arrived, he observed Defendant sitting in a vehicle in front of Ms. Holt's house, smoking marijuana with Ralph Richardson, from whom he expected to buy the cocaine. Defendant told Officer Murr that he was the one with the cocaine and handed Officer Murr the "crack" cocaine wrapped in a piece of paper, for which Officer Murr gave Defendant $150.

The jury convicted Defendant on all eight counts of the indictment. For the September 9, 1999 transaction, counts one and two, the jury convicted Defendant of the lesser-included offense of facilitation of the sale of cocaine and facilitation of the delivery of cocaine. On the remaining counts, the jury convicted Defendant as charged for the sales and deliveries of over .5 grams of cocaine in violation of Tenn. Code Ann. § 39-17-417(a)(2), (a)(3), (c)(1).

At the October 22, 2001, sentencing hearing, Defendant testified that he was addicted to cocaine, marijuana, and alcohol. He also testified that he was not regularly employed, and that he paid for his drug habit by selling drugs. The proof at the sentencing hearing shows that Defendant was on probation for previous convictions at the time he committed the offenses which are the

subject of this appeal.  At the time these offenses occurred, Defendant was also on probation for a drug conviction in Alabama.  Defendant testified that he would not have committed the crimes for which he was convicted in this case had he been incarcerated for the earlier convictions rather than being released into the community on probation.

The trial court merged counts two, four, six, and eight (each related to the delivery of cocaine) into counts one, three, five, and seven (each related to the sale of cocaine).  For his facilitation of the sale of cocaine conviction, count one, Defendant received a sentence of ten years. Defendant received eighteen-year sentences for each of the remaining three counts, which the trial court ordered to run concurrent with each other, but consecutive to the ten-year sentence, resulting in the total effective sentence of twenty-eight years.

**Sentencing**

Defendant argues that the total effective sentence imposed is excessive, challenging both the length of the sentences and the trial court's order of consecutive sentencing.

At the time of the sentencing hearing, there were twenty-two statutory enhancement factors listed in Tennessee Code Annotated section 40-35-114.  Subsequently, in Public Acts 2002, ch. 849, § 2 c, the legislature added a twenty-third enhancement factor, but listed it as enhancement factor (1) and renumbered previous factors (1) through (22) as (2) through (23).  *See* Tenn. Code Ann. § 40-35-114 (Supp. 2002).  In this opinion, we will refer to the enhancement factors of Tennessee Code Annotated section 40-35-114 as they existed at the time of the sentencing hearing on October 22, 2001.

The trial court found that two enhancement factors were applicable to all of the convictions: (a) the defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, enhancement factor (1); and (b) the defendant committed the offenses while on probation from a prior felony conviction, enhancement factor (13). *See* Tenn. Code Ann. § 40-35-114 (1997).  The court also applied mitigating factor (1), the defendant's criminal conduct neither caused nor threatened serious bodily injury.  *See* Tenn. Code Ann. § 40-35-113 (1997).

For a Range II multiple offender convicted of a Class C felony, the possible range of punishment is not less than six years nor more than ten years.  Tenn. Code Ann. § 40-35-112(b)(3) (1997).  For a Range II multiple offender convicted of a Class B felony, the possible range of punishment is not less than twelve years nor more than twenty years.  Tenn. Code Ann. § 40-35-112(b)(2) (1997).  The presumptive sentence for Class B and Class C felonies is the minimum sentence in the range if there are no applicable enhancement or mitigating factors.  Tenn. Code Ann. § 40-35-210(c) (1997).  If enhancement factors exist, but no mitigating factors, the trial court may enhance the sentence above the minimum in that range but still within the range.  Should both enhancement and mitigating factors exist, the trial court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the

sentence as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(d), (e) (1997). As stated above, Defendant received the maximum sentence of ten years for the facilitation conviction, a Class C felony, and eighteen years for each sale conviction, Class B felonies.

The determination to order partial consecutive sentencing was based upon the trial court's findings by a preponderance of the evidence that Defendant is a professional criminal, Defendant has an extensive history of criminal behavior, and Defendant committed the offenses while on probation. Tenn. Code Ann. § 40-35-115(b)(1), (2), and (6) (1997).

A defendant's sentence is reviewed by the appellate courts *de novo* with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d); *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002). For this presumption to apply to the trial court's actions, there must be an "affirmative showing in the record that the trial court considered sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). When determining or reviewing a sentence, courts must consider:(1) the evidence received at trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence offered by the parties on the enhancement and mitigating factors; (6) any statement the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103(5), -210(b); *Ashby*, 823 S.W.2d at 168.

If the trial court has imposed a lawful sentence by following the statutory sentencing procedure, has given due consideration and proper weight to the factors and sentencing principles, and has made findings of fact adequately supported by the record, this court may not modify the sentence even if it would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, if the trial court does not comply with statutory sentencing provisions, our review of the sentence is *de novo* with no presumption the trial court's determinations were correct. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000).

The weight given to each enhancement or mitigating factor is in the discretion of the trial court, provided that the trial court has complied with the purposes and principles of the Sentencing Act and its findings are supported by the record. *State v. Zonge*, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997). The statutes prescribe no particular weight for an enhancement or mitigating factor. *State v. Gosnell*, 62 S.W.3d 740, 750 (Tenn. Crim. App. 2001). The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments.

Regarding the length of the sentences imposed, Defendant argues that the trial court erred by imposing the maximum sentence in the range, ten years, for count one, and that eighteen years is an excessive sentence for a Range II offender of a Class B felony in light of the one mitigating factor applied by the trial court. Defendant further argues that the trial court failed to consider his potential for rehabilitation.

-4-

For all of Defendant's convictions, the trial court started at the minimum sentence in the range, and enhanced the sentences for the two enhancement factors present. The trial court applied one mitigating factor, but gave it little weight. The trial court placed emphasis on Defendant's extensive record of prior convictions. The trial court noted that two of Defendant's previous convictions were used to establish him as a Range II offender. Therefore, the court could not consider those offenses for the purpose of enhancement. Defendant had two other convictions for cocaine sales in Giles County and a felony marijuana conviction in Alabama, which the trial court properly considered and applied to Defendant's sentence for the purpose of enhancement.

The trial court noted that Defendant's conviction in Alabama appeared to be the equivalent of a Class E felony conviction in Tennessee. To qualify as a Range III persistent offender, a defendant must have received at least five prior felony convictions within the next two lower felony classes than the class of felony for which he is presently being sentenced. Tenn. Code Ann. § 40-35-107(a)(1) (1997). The trial court found that Defendant could have been sentenced as a Range III offender for his Class C felony conviction, but none of his prior convictions could be used to enhance his sentence. The minimum sentence in the range for a Range III offender of a Class C felony is ten years. Tenn. Code Ann. § 40-35-112(c)(3) (1997). Thus, the trial court found that the maximum sentence in the range was appropriate under those circumstances.

We note that the trial court's analysis is not entirely correct. Convictions used to establish a defendant's range may not also be used for enhancement purposes. The Sentencing Act allows for enhancement, however, only by application of the statutory enhancement factors listed in Tenn. Code Ann. § 40-35-114. The mere fact that a defendant qualifies for a sentence in Range III cannot be used to enhance the defendant's Range II sentence. Nevertheless, we conclude that in light of Defendant's extensive history of criminal behavior, the maximum sentence within the range for a Class C felony is appropriate in this case. The weight given by the trial court to the applicable enhancement factors is not improper. The trial court also applied the statutory enhancement factors to Defendant's sentences for his three Class B felony convictions, imposing an eighteen-year sentence for each of those convictions. Application of the enhancement factors to those sentences is also appropriate. Defendant is not entitled to relief on this issue.

As stated above, Defendant argues that the trial court failed to consider his potential for rehabilitation. A defendant's potential for rehabilitation is a relevant consideration for sentencing. Tenn. Code Ann. § 40-35-103(5) (1997). At the conclusion of the sentencing hearing, the trial court emphasized Defendant's own testimony that he would not have committed these offenses had he been incarcerated rather than released on probation for his prior offenses. Defendant's potential for rehabilitation was, therefore, not a favorable factor. We conclude that the trial court properly considered all relevant sentencing principles and its findings are adequately supported by the record.

Regarding consecutive sentencing, Defendant argues that the trial court did not impose the least severe sentence necessary to achieve its purpose. The general principles of sentencing provide that the sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(4) (1997). At the conclusion of the

sentencing hearing, the trial court found that Defendant had not satisfactorily completed less restrictive sentencing in the past. We agree.

Moreover, as we mentioned above, the trial court found that Defendant met three of the seven criteria listed in Tenn. Code Ann. § 40-35-115, the statute governing consecutive sentencing. Defendant points out that Tenn. Code Ann. § 40-35-115 does not mandate, but rather grants the trial court discretion to order consecutive sentencing, providing that "[t]he court *may* order sentences to run consecutively," if it finds that any of the statutory factors to apply. (Emphasis added). We find this argument unpersuasive and conclude that the trial court acted within its discretion to order consecutive sentencing. Defendant is not entitled to relief on this issue.

**Severance of Offenses**

Defendant argues that the trial court erred in denying his motion to sever the offenses for which he was charged. The indictment charged Defendant with eight offenses, including four counts of the unlawful delivery of cocaine and four counts of the unlawful sale of cocaine.

A trial court is permitted to join offenses for trial if "the offenses constitute parts of a common scheme of plan or if they are of the same or similar character." Tenn. R. Crim. P. 8(b). Rule 14(b)(1) of the Tennessee Rules of Criminal Procedure provides that if two or more offenses have been joined or consolidated for trial pursuant to Rule 8(b), the defendant has a right to severance "unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others." Tenn. R. Crim. P. 14(b)(1).

We review a trial court's decision to consolidate or sever offenses pursuant to Rules of Criminal Procedure 8(b) and 14(b)(1) for an abuse of discretion. *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). Additionally, "a trial court's refusal to sever offenses will be reversed only when 'the trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice for the party complaining.'" *Id.* (quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)).

A trial court may not deny a severance pursuant to Rule 14(b)(1) unless it concludes "from the evidence and arguments presented at the hearing that: (1) the multiple offenses constitute parts of a common scheme or plan; (2) evidence of each offense is relevant to some material issue in the trial of the other offenses; and (3) the probative value of the evidence of other offenses is not outweighed by the prejudicial effect admission of the evidence would have on the defendant." *State v. Spicer*, 12 S.W.3d 438, 445 (Tenn. 2000) (internal citations omitted). Furthermore, "a defendant has *an absolute right to sever* offenses that are only of the same or similar character." (Emphasis added). *Id.* at 443.

Typically, a motion to consolidate or sever offenses is a pretrial motion, and "evidence and arguments tending to establish or negate the propriety of consolidation must be presented to the trial court in the hearing on the motion." *Id.* at 445. In reviewing a trial court's determination to

consolidate or sever the offenses for abuse of discretion, appellate courts are restricted to the evidence presented at the pretrial hearing, as well as the trial court's findings of fact and conclusions of law. *Id*.

In the present case, the trial court conducted a hearing to determine whether to sever the offenses. The transcript of that hearing, however, is not part of the record on appeal. Without the transcript, we cannot adequately review the trial court's denial of severance for an abuse of discretion. The trial court's order denying Defendant's motion to sever the offenses gives only conclusions of law without making any findings of fact. In denying Defendant's motion to sever the offenses, the trial court summarily concluded that the offenses "appear to be part of a common scheme or plan, and the evidence of others would be admissible in the trial of any one as more probative than prejudicial on the issues of the defendant's culpable mental state, whether a casual exchange, and possibly even identification of the defendant." The only proof available to us in making our determination is a collective exhibit, which contains the notes of Officer Murr in the investigation involving Defendant. On the issue of severance, the record before us is therefore insufficient for adequate appellate review. The appellant has a duty to prepare a record on appeal that conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues that form the basis of the appeal. Tenn. R. App. P. 24(b). In the absence of an adequate record, we must presume that the trial court's determination was correct. *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). The issue is therefore waived.

Nevertheless, we are compelled to note other deficiencies in the record. In order to facilitate appellate review, the trial court should have made findings of fact based on the evidence and arguments presented at the hearing on the motion to sever. The trial court concluded that the offenses "appear to be part of a common scheme or plan, . . . ." Our supreme court has defined "common scheme or plan" evidence as "(1) offenses that reveal a distinctive design or are so similar as to constitute 'signature' crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction." *Shirley*, 6 S.W.3d at 248; *State v. Moore*, 6 S.W.3d 235, 240 (Tenn. 1999). We cannot determine from the order which of these three types of common scheme or plan evidence the court found the offenses to be, nor does the trial court state which facts it relied upon in reaching its conclusion.

While the offenses in this case share similarities, they do not appear to be so distinctive in design or unique in method as to constitute "signature" crimes. The test for determining whether the offenses reveal a distinctive design is whether they "give rise to an inference of identity." *Moore*, 6 S.W.3d at 240. If the crimes are so unique that a reasonable person could conclude that the same person committed each offense, they can be characterized as a "common scheme or plan." *Id*. For instance, if a detailed police summary report of the facts of each case is available for judicial review, the judge should be able to infer, without reference to the name of the defendant, that the same person committed each crime. The emphasis must be on whether the facts of each case point to one perpetrator, and not whether there is evidence to support a conclusion that the defendant committed each crime. *Shirley*, 6 S.W.3d at 248. There is nothing in the record to indicate that the drug transactions satisfy this criteria. Furthermore, Defendant's identity was not an issue at trial.

Therefore, even if the offenses constituted "signature" crimes, evidence of the offenses would not be relevant to show identity.

The offenses are not part of the same criminal transaction. To fit this category, the offenses must have occurred within a single criminal episode. *State v. Hallock*, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993). The offenses in this case occurred on different dates, at different locations, and proof of each offense can easily be separated for trial. With regard to whether the offenses are part of a larger, continuing plan or conspiracy, we cannot make this determination without a complete record.

The second prong of the severance analysis requires that evidence of one offense be admissible upon the trial of each of the others. The trial court's order does not state which facts in each case the trial court determined would be admissible in each of the other cases to prove Defendant's "culpable mental state, whether [the transaction] was a casual exchange, and possibly even identification of the defendant." Moreover, we cannot read *Spicer* to justify "possibly" admissible evidence in order to deny severance of the offenses.

Although we are not able to conclude from the record that the trial court abused its discretion in refusing to sever the offenses, we do conclude that if the denial of severance was error, it does not appear to have affirmatively affected the outcome of the trial. *See* Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b). The "'line between harmless and prejudicial error is in direct proportion to the degree of the margin by which the proof exceeds the standard required to convict, beyond a reasonable doubt.'" *Shirley*, 6 S.W.3d at 250 (quoting *Delk v. State*, 590 S.W.2d 435, 442 (Tenn. 1979)). The strength of the State's case against Defendant in each of the offenses charged was overwhelming; this renders any error by the trial court harmless. Therefore, Defendant is not entitled to relief on this issue.

## CONCLUSION

We affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE