# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 21, 2000 Session

## STATE OF TENNESSEE v. SONYA MICHELLE GOSNELL and BRONZO GOSNELL, JR.

**Direct Appeal from the Criminal Court for Greene County**
**No. 99CR036 and 99CR036A    James E. Beckner, Judge**

---

**No. E1999-00603-CCA-R3-CD**
**March 20, 2001**

---

A jury convicted both defendants of second degree murder.  Bronzo Gosnell and Sonya Gosnell were sentenced to 25 years and 20 years, respectively.  In this appeal as a matter of right, both defendants challenge the introduction of recorded conversations made while detained in a police cruiser.  Sonya Gosnell further challenges the introduction of certain pretrial statements, the administration of a polygraph examination, the denial of her motion for severance, and the denial of expert assistance. Bronzo Gosnell further challenges the trial court's limitation of his cross-examination of a witness and his maximum sentence of 25 years.  Our review of the issues presented by the defendants reflects no reversible error.  Accordingly, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Greg W. Eichelman, District Public Defender; Michael A. Walcher, Assistant District Public Defender, Greeneville, Tennessee, for the appellant, Sonya Michelle Gosnell.

William Louis Ricker, Greeneville, Tennessee, for the appellant, Bronzo Gosnell, Jr.

Paul G. Summers, Attorney General and Reporter; Russell S. Baldwin, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Cecil C. Mills, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Following a joint trial for the offense of first degree murder, a Greene County jury convicted both Bronzo Gosnell and Sonya Gosnell of the lesser-included offense of second degree murder. Bronzo Gosnell received a sentence of 25 years, while Sonya Gosnell received a sentence of 20

years.  After a careful examination of the issues presented by the defendants, we find no reversible error.  Accordingly, we affirm the judgments of the trial court.

**FACTS**

Although neither defendant challenges the sufficiency of the evidence, a brief recitation of the underlying facts is appropriate.  On February 1, 1999, Barbara Ann Savage, the former wife of the victim, Charles Gillette, entered the victim's residence and found him dead from apparent gunshot wounds.  She immediately phoned 911, and emergency personnel responded.  The police seized three shell casings and two bullets from the victim's home.  Subsequently, one bullet was removed from the victim, and later that week, a relative of the victim found an additional shell casing at the victim's residence.

The defendants had previously purchased a vehicle from the victim for $600, to be paid at $50 per week.  At the time of the murder, the defendants owed the victim $150.  The victim's billfold was recovered at the scene containing a nominal sum of cash.  However, the victim utilized a pink coffee cup to store cash, and the victim's former spouse observed between $400 and $500 in the cup on January 14, 1999.  Officers recovered the pink cup at the victim's residence, but it was empty.

Barbara Ann Savage informed the responding officers that she had phoned the victim on the previous evening, and he told her that he was watching the Super Bowl with the defendants.  Pursuant to that information, the police located the defendants at Bronzo Gosnell's mother's home on February 1, 1999, and the defendants agreed to be transported to police headquarters for questioning.  Sonya Gosnell advised the authorities she and her husband earlier watched the Super Bowl with the victim, but left shortly after 8:00 p.m.  She denied any involvement in the homicide.  Bronzo Gosnell advised the authorities he had been drinking that day, and did not remember being at the victim's residence.

Sonya Gosnell voluntarily drove to police headquarters for another interview on February 4, 1999.  During this interview, she stated they left the victim's residence during half-time of the Super Bowl.  She further acknowledged she had been to the victim's residence on other occasions to make the car payments.  She continued to deny involvement in the homicide.

On February 9, 1999, at approximately 6:00 a.m., officers executed a search warrant at defendants' residence.  Bronzo Gosnell was immediately placed in the backseat of a police cruiser.  Sonya was allowed to obtain clothing and dress, and was then placed in the cruiser with Bronzo. The defendants' conversations were recorded, and a redacted copy containing incriminating remarks was admitted against them at trial.

Officers seized eight 0.380 shell casings in the defendants' yard and three 0.380 bullets from an adjacent field.  A firearms expert with the Tennessee Bureau of Investigation testified that four of the eight 0.380 shell casings seized from the defendants' yard were fired from the same weapon

that killed the victim. Additionally, the expert testified that the two bullets recovered from the victim's home, the one bullet recovered from the victim's body, and the three bullets seized from the field adjacent to the defendants' property, were fired from the same gun.

## I. PRETRIAL STATEMENTS –SONYA GOSNELL

Sonya Gosnell attacks the admission of her statements to authorities on February 1 and 4, 1999. She contends her statements were taken prior to <u>Miranda</u> warnings and should have been suppressed. Only the officers testified at the hearing; Sonya Gosnell did not. We conclude she was not in "custody" on either occasion; therefore, we find the statements were properly admitted.

### A. February 1, 1999

Sonya Gosnell alleges that the trial court erred by admitting the statements that she made at police headquarters during the late hours of February 1, 1999, and the early morning hours of February 2, 1999. The evidence indicates that on February 1, 1999, two detectives arrived at Bronzo Gosnell's mother's house looking for the defendants. The detectives inquired if the defendants would be willing to answer questions at police headquarters, and defendants answered affirmatively. The detectives invited the defendants to ride with them, and the defendants were taken to the police headquarters in an unmarked vehicle and questioned concerning the death of the victim. The defendants were told they were free to leave at anytime, were not under arrest, and would be returning home. The defendants were allowed to visit with relatives when not being interrogated. They were taken back home after questioning.

### B. February 4, 1999

Sonya Gosnell alleges that the trial court erred by admitting the statements that she made to investigators on February 4, 1999. The evidence indicates that two investigators went to the defendants' home at 8:30 a.m. on February 4th, and told Sonya Gosnell they would like to speak with her. She asked if she could come to the police station later, and the investigators agreed. Upon arrival at police headquarters at approximately 11:00 a.m., she talked with Detective Don Jones in his office for one to two hours. Then, Detective Jones took her to lunch. Thereafter, she was further interrogated after being given <u>Miranda</u> warnings. She left in her own vehicle after questioning.

### C. Trial Court Findings

The trial court found that both statements were admissible. Specifically, the trial court found that the defendant was not in custody at the time she gave the statements, and there was no reason for <u>Miranda</u> warnings.

**D. Standard of Review**

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this Court unless the evidence contained in the record preponderates against them. State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolves any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). However, this Court is not bound by the trial court's conclusions of law. State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998). The application of the law to the facts found by the trial court are questions of law that this court reviews *de novo*. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. Braziel v. State, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

**E. Analysis**

In Miranda v. Arizona, the United States Supreme Court held that the prosecution cannot admit a statement by the defendant stemming from "custodial interrogation" unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* Thus, because Miranda is only implicated when the defendant is questioned while in the coercive environment associated with being in police custody, our initial inquiry is whether defendant was subjected to "custodial interrogation."

Recently, our Supreme Court developed the test in Tennessee for determining whether an individual is "in custody" as contemplated by Miranda. *See* State v. Anderson, 937 S.W.2d 851 (Tenn. 1996). We must determine whether, "under the totality of the circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with formal arrest." *Id.* at 855. Factors relevant to that determination include:

> the time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.

*Id.*

## F. Our Conclusions

The trial court applied the <u>Anderson</u> factors to the February 1st statement and determined that the defendant was not subjected to custodial interrogation. The trial court found that there were no coercive circumstances; the time and location of questioning was favorable to the state; the defendant was transported to headquarters voluntarily in an unmarked vehicle by officers in plain clothes; the duration and character of the questioning and the officer's tone of voice and general demeanor were extremely favorable to the state; there were no officers with the defendant in the hall where the defendant spent time visiting with relatives; there were no confrontations of suspicions of guilt; and the defendant was told that she would be returning home.

We conclude that the trial court correctly applied the <u>Anderson</u> factors and found that the defendant was not in custody. Accordingly, defendant's <u>Miranda</u> rights were not triggered, and defendant's motion to suppress the February 1st statement was correctly denied.

As to the February 4th statement, the trial court again found the defendant was not in custody pursuant to <u>Anderson</u>. The evidence indicates that Sonya Gosnell voluntarily drove to police headquarters upon request by investigators. The testimony of Detective Don Jones indicates that they engaged in casual conversation concerning the circumstances of the crime, which lasted between one and two hours. The door remained open, and the situation was non-confrontational. The defendant left in her vehicle after questioning.

We conclude that the trial court correctly applied the <u>Anderson</u> factors and found that the defendant was not in custody. Accordingly, defendant's <u>Miranda</u> rights were not triggered, and defendant's motion to suppress the February 4th statement was correctly denied.

## II. RECORDED CRUISER CONVERSATIONS –BOTH DEFENDANTS

Both defendants claim that the trial court erred by denying their motions to suppress recorded inculpatory statements made while they were detained in the backseat of a police cruiser during the execution of the search warrant. Both defendants contest the admissibility of the recorded conversations based upon the marital communication privilege and violation of their Fourth Amendment reasonable expectation of privacy. In addition, Sonya Gosnell contends the authorities did not honor her right to remain silent and her right to counsel.[1]

---

[1] The defendants did not argue in the trial court, nor do they argue in this court, that their seizure and detention in the police cruiser during the execution of the search warrant was unlawful. *See generally* <u>Michigan v. Summers</u>, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Likewise, we do not address that issue as the record is not sufficiently developed for appropriate appellate review.

## A. Marital Communication Privilege

Tenn. R. Evid. 501 provides:

Except as otherwise provided by constitution, statute, common law, or by these or other rules promulgated by the Tennessee Supreme Court, no person has a privilege to: (1) [r]efuse to be a witness; (2) [r]efuse to disclose any matter; (3) [r]efuse to produce any object or writing; or (4) [p]revent another from being a witness or disclosing any matter or producing any object or writing.

Accordingly, the defendants' claim of privilege must fail unless it is provided by constitution, statute, common law, or by the Tennessee Supreme Court.[2]

Originally, the rule of marital privilege was announced by our supreme court in McCormick v. State, 135 Tenn. 218, 186 S.W. 95 (1916). In McCormick, the supreme court held that "[s]ound public policy requires that neither the husband nor the wife shall be permitted to testify, in criminal cases, as to any matter coming to his or her knowledge by reason of the marital relation." 186 S.W. at 97.

The applicable marital communication privilege was codified by the General Assembly in Tenn. Code Ann. § 24-1-201(b) (Supp. 1999), and the pertinent portion states, "[i]n either a civil or criminal proceeding, confidential communications between married persons are privileged and inadmissible if either spouse objects."[3] However, the privilege is not absolute. In Adams v. State, this court observed that the following conditions exist when a communication between husband and wife is to be considered privileged:

(1) the communications must originate in a confidence that they will not be disclosed;

(2) this element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties;

---

[2]The defendants seek to invoke the marital privilege against a recitation by a third party who recorded conversations between them. It is undisputed that the conversations were recorded without the knowledge of either spouse. Neither spouse testified at trial. Previous Tennessee case law has applied the marital communication privilege to situations where a witness spouse is testifying against a defendant spouse. Some courts have not applied the marital communication privilege when "the conversation was overheard or intercepted accidently or by design." 3 **Wharton's Criminal Evidence** § 11:44, pp. 174-75 (15th ed. 1999) (citations omitted). Since we conclude the marital communication privilege does not otherwise apply in this case, we do not address this issue.

[3]The General Assembly recently amended the language of Tenn. Code Ann. § 24-1-201. *See* 2000 Public Acts, Chapter 831. However, the effective date of the new statute was January 1, 2001, after the trial in this case.

(3) the relation must be one which, in the opinion of the community, ought to be sedulously fostered; and

(4) the injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation.

563 S.W.2d 804, 808 (Tenn. Crim. App. 1978). All four of these conditions must exist to protect the evidence by the marital privilege. State v. Garland, 617 S.W.2d 176, 183 (Tenn. Crim. App. 1981).

Here, the marital privilege fails because of the lack of confidentiality. The evidence does reflect that the Gosnells' communications were subjectively intended to be private. However, this court has held that people on the backseat of a police cruiser cannot have an objectively reasonable expectation of privacy for Fourth Amendment purposes. See State v. Morgan, 929 S.W.2d 380, 384 (Tenn. Crim. App. 1996). In this respect, if it is objectively unreasonable to expect that a conversation in the back of a police car is private, then it is also unreasonable to expect that the conversation is confidential. Although the circumstances of the Gosnells' recorded conversation seem suspect – persons who ordinarily hold a confidential communication privilege being placed in the back of a police car and left alone, creating the appearance that their communications could be private – we conclude that case law dictates that their communications cannot be considered confidential. Thus, the marital communication privilege does not exist in this case.

## B. Expectation of Privacy

The defendants claim that the trial court erred by denying their motion to suppress their recorded conversations made in the backseat of a police cruiser due to their reasonable expectation of privacy. As we discussed in the previous section, this court has held that people in the backseat of a police cruiser do not have an objectively reasonable expectation of privacy. Morgan, 929 S.W.2d at 384. We see no reason to deviate from this holding. There is no merit to this issue.

## C. Right to Remain Silent / Right to Counsel

Sonya Gosnell contends that the authorities failed to honor her right to remain silent and her invocation of her right to counsel. The evidence indicates that Sonya Gosnell exited the police cruiser several times to use the restroom. On one occasion, she spoke to an officer who advised her of her Miranda warnings. She then indicated she did not want to answer any questions without her attorney present. She returned to the police cruiser, where the surreptitious taping continued. She now contends any statements made after she spoke to the officer are inadmissible.

As a general rule, a defendant's invocation of the right to remain silent or to counsel necessitates that further interrogation cease, subject to certain exceptions. *See generally*, Miranda v. Arizona, 384 U.S. 436, 473-74, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966); Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1884-85, 68 L.Ed.2d 378 (1981). However, in the case at bar,

the defendant was not being interrogated at the time she gave the incriminating statements. Thus, there is no violation of <u>Miranda</u> or <u>Edwards</u>. We further conclude that the subterfuge employed by the authorities to secretly record her unsolicited remarks does not violate the constitutional rights of the defendant. *See generally* <u>Illinois v. Perkins</u>, 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990); <u>State v. Branam</u>, 855 S.W.2d 563, 568-69 (Tenn. 1993).

### III.  POLYGRAPH EXAMINATION –SONYA GOSNELL

Although no evidence concerning the polygraph examination was admitted at trial, Sonya Gosnell claims the mere administration of a polygraph examination, subsequent to her consent and waiver of her <u>Miranda</u> rights, violated the Fifth and Sixth Amendments of the United States Constitution.  She cites no authority to support her contention, and we find none. This issue is without merit.

### IV.  PSYCHOLOGICAL EVALUATION – SONYA GOSNELL

Sonya Gosnell challenges the trial court's denial of her motion for further mental evaluation. The trial court granted the defendant's motion for a court-ordered mental evaluation, and it ordered that she be evaluated concerning her competency to stand trial and her sanity at the time of the offense. She now contends that the trial court erred in refusing to authorize state funds for further private evaluation as to whether she "was under the duress and domination of her husband."

An indigent defendant in a non-capital case is entitled to state-funded psychiatric assistance only upon a showing of "particularized need." <u>State v. Barnett</u>, 909 S.W.2d 423, 430 (Tenn. 1995). The request for further mental evaluation appears to relate to possible post-traumatic stress syndrome and its effect upon her statements to authorities. Another request appears to relate to "diminished capacity." We have not been cited to a transcript of a hearing conducted on the requests. We further note that defendant was acquitted of first degree murder and found guilty of second degree murder. Based upon the record before us, we conclude the defendant failed to establish a particularized need for further evaluation.

### V.  SEVERANCE – SONYA GOSNELL

Sonya Gosnell challenges the trial court's denial of her motion for severance. In support of her argument, she asserts that (1) the prior abusive behavior of her co-defendant husband precluded her from presenting exculpatory testimony, which would have inculpated the co-defendant; (2) if she chose to testify, her testimony could have incriminated her co-defendant husband, thus effectually denying her the right to testify; and (3) her co-defendant husband's jailhouse statement asserting that he told his brother to destroy the murder weapon prejudiced her defense.

Tenn. R. Crim. P. 14(c)(2)(i) and (ii) provide that the court shall grant a severance of defendants if deemed appropriate to promote a fair determination of the guilt or innocence of a defendant. The decision is left to the sound discretion of the trial judge, and this decision will not

be disturbed absent undue prejudice. *See* State v. Coleman, 619 S.W.2d 112, 116 (Tenn. 1981). A trial court will not be found to have abused its discretion in denying a severance unless the defendant was prejudiced to the point that the granting of a severance became a judicial duty. State v. Burton, 751 S.W.2d 440, 447 (Tenn. Crim. App. 1988).

Defendant's contention that she was precluded from presenting evidence that was inculpatory to her husband, and exculpatory to her, is without merit. This was her choice, and she was not precluded from doing so. Even "mutually antagonistic" defenses do not *per se* require a severance, although they may in some circumstances. Zafiro v. United States, 506 U.S. 534, 539, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993). Her husband's jailhouse statement concerning the murder weapon only inculpated her husband, not the defendant. Thus, there was no Bruton problem. *See* Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Accordingly, we find that the trial court did not err in refusing defendant's motion for severance.

## VI. LIMITATION OF CROSS-EXAMINATION –BRONZO GOSNELL

Bronzo Gosnell contends that the trial court erred by unreasonably limiting counsel's cross-examination of two TBI agents. After the agents testified that no latent fingerprints were lifted at the crime scene, defense counsel persisted in asking who was responsible for the lifting of prints. The trial court stopped further questioning relating to the responsibility for lifting prints.

Generally, lawyers should be accorded wide latitude in cross-examining witnesses. *See* State v. Forbes, 918 S.W.2d 431, 450 (Tenn. Crim. App. 1995). However, cross-examination is subject to reasonable limitations to prevent obstruction of the orderly progress of a trial. State v. Sheline, 955 S.W.2d 42, 47 (Tenn. 1997). These limitations are left to the trial court's sound discretion. State v. Rosa, 996 S.W.2d 833, 839 (Tenn. Crim. App. 1999). Clearly, the evidence must be relevant. *See* Tenn. R. Evid 402. Further, the trial court may use its discretion to avoid unfair prejudice, confusion, or waste of time. *See* Tenn. R. Evid. 403.

Both witnesses indicated there were no latent prints taken. This is certainly relevant; however, an inquiry into the person responsible for this shortcoming is not. The trial court was well within its discretion in concluding this was irrelevant.

## VII. SENTENCING –BRONZO GOSNELL

### A. Standard of Review

Bronzo Gosnell attacks the imposition of the maximum 25-year sentence. This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply

with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

If no mitigating or enhancement factors for sentencing are present, Tenn. Code Ann. § 40-35-210(c) provides that the presumptive sentence for this Class A felony shall be the midpoint within the range. No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

## B. Analysis

Gosnell contends that the trial court improperly sentenced him to 25 years, while only sentencing Sonya Gosnell to 20 years. Defendant argues that the trial court erroneously weighed enhancement factor (9), employment of a firearm during the commission of the offense, more strongly in his sentence than it did in Sonya Gosnell's sentence. *See* Tenn. Code Ann. § 40-35-114(9).

Our sentencing act is designed to eliminate unjustified disparity in sentencing and provide for consistent treatment of defendants. Tenn. Code Ann. § 40-35-102(2). However, each defendant must be viewed individually with regard to the enhancing and mitigating factors applicable to that defendant. *See* Moss, 727 S.W.2d at 235.

With regard to Bronzo Gosnell, the trial court applied the following enhancement factors:

(1) previous history of criminal convictions or behavior, Tenn. Code Ann. § 40-35-114(1);

(2) previous history of unwillingness to comply with conditions involving release into the community, Tenn. Code Ann. § 40-35-114(8);

(3) employment of a firearm during the commission of the offense, Tenn. Code Ann. § 40-35-114(9); and

(4) adjudicated to have committed a delinquent act as a juvenile that would constitute a felony if committed by an adult, Tenn. Code Ann. § 40-35-114(20).

Their application is not challenged. Further, the trial court found no mitigating factors. However, the trial court found only two enhancement factors applicable to Sonya Gosnell. The trial court also found certain mitigating factors should be applied to her sentence.

The presumptive sentence for this Class A felony was 20 years. *See* Tenn. Code Ann. § 40-35-210(c). The trial court appropriately sentenced Bronzo Gosnell to 25 years based upon its correct application of the above-mentioned factors. There is no unjustified disparity in his sentence.

## CONCLUSION

We conclude that the issues presented to us by the defendants are without merit, and we affirm the convictions and sentences of both.

_____
JOE G. RILEY, JUDGE