# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 19, 2003

## STATE OF TENNESSEE  v.  BRANDON D. FORBES

**Direct Appeal from the Circuit Court for Dickson County**
**No. CR6055      Robert E. Burch, Judge**

---

**No. M2003-00474-CCA-R3-CD - Filed February 6, 2004**

---

Defendant, Brandon D. Forbes, was indicted on one count of aggravated robbery and one count of theft. Following a jury trial, Defendant was convicted of both counts. The trial court merged the two counts into a single count of aggravated robbery. Following a sentencing hearing, Defendant was sentenced to serve ten years. In this appeal as of right, Defendant challenges the sufficiency of the evidence and argues that his sentence was excessive. After a careful review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Merrilyn Feirman, Nashville, Tennessee (on appeal); William Bradley Lockert, III, District Public Defender; and Christopher L. Young, Assistant Public Defender (at trial) for the appellant, Brandon D. Forbes.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Kim Menke, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

On December 31, 2001, the victim, Morgan Franceschini, stopped for gas at the Texaco station on Highway 46 next to the Bank of Dickson. As the victim was leaving the store, he stopped behind an orange pickup truck in front of him, waiting for traffic to clear before pulling onto the highway. While the victim was stopped behind the orange truck, he saw Defendant exit the passenger side of the orange truck and approach the passenger side of the victim's vehicle. Defendant asked the victim for a ride to Wal-Mart. The victim, who had never before seen Defendant, told Defendant that he did not have time. Defendant then asked the victim to drive him to the Archway Apartment complex, only a short distance away from the Texaco. The victim agreed because he was on his way to visit a friend, Jason Sullivan, who lived at Archway Apartments.

The orange truck turned right onto the highway and drove toward Wal-Mart. The victim also turned right, and then turned left into Archway Apartments. The victim stopped in front of the apartments where Defendant told him to stop. Defendant asked the victim to wait for him while he ran into his friend's apartment and then drive him to Wal-Mart. The victim refused. Defendant then got out of the victim's vehicle, turned around and pointed a gun at the victim and told the victim "to give [his] shit up." The victim heard "rapid action" from the gun and got out of his truck and began running away. The victim heard gunfire and ran harder. Defendant said, "Come back here, nigga, I'm not done with you." The victim ran into Wal-Mart. He met his brother inside Wal-Mart, and his brother told someone at the store to call 911. The police arrived. Several of the victim's friends also arrived on the scene. The victim spoke to Sergeant Miller. The victim did not see his 1998 Ford Ranger, valued at between six and seven thousand dollars, until it was recovered by the police about four or five days after the incident.

Following the incident, the victim identified Defendant in a photographic lineup. Detective Breeden also showed the victim a videotape taken at the Texaco, and the victim recognized Defendant inside the store. Detective Breeden took a tape recorded statement from the victim. In that statement, the victim did not tell Detective Breeden that Defendant had told him to "give [his] shit up."

Matthew Kuntz was riding with Defendant and Ecedro Vasquez in an orange truck on December 31, 2001. Mr. Kuntz sat in the middle of the truck between Mr. Vasquez, who was driving, and Defendant, who sat in the passenger seat. Mr. Vasquez pulled into the Texaco station on Highway 46 to fill his truck with gas. As they were leaving the Texaco, Defendant "jumped out" of the truck and said, "hold on." Defendant walked back to a green truck stopped behind Mr. Vasquez's truck and then came back a few minutes later and told them to go ahead without him and that he had "found a ride." Mr. Vasquez then drove Mr. Kuntz to the Trails Apartments, where he lived. The Trails Apartments are located a short distance from Archway Apartments, between Archway Apartments and Wal-Mart. As they waited to turn left into the Trails, Mr. Kuntz saw the green truck turn into Archway Apartments.

Cassie Morgan knew Defendant through her roommate, Nancy Weedman, who dated Thomas Lee Boeing, a friend of Defendant's. On January 1, 2002, Ms. Morgan heard Defendant tell someone else that he had pulled a gun on a man and taken his truck. Ms. Morgan gave a statement to the police on January 4, 2002, but she did not tell the police about Defendant's confession. Ms. Morgan explained that Officer Shane Dunning had asked her the whereabouts of Thomas Lee Boeing, and she told Officer Dunning that he had just left her house going to Monique Boeing's house. Ms. Morgan had pled guilty to selling counterfeit drugs.

Detective Eddie Breeden of the Dickson Police Department had attempted to locate Thomas Lee Boeing because he knew that he and Defendant "hung together a lot." Detective Breeden testified that the victim's truck was recovered around Eighth Avenue and Jefferson in Nashville, within two miles of Defendant's residence. Detective Breeden interviewed the victim. He asked the

victim whether the incident had been a "bad drug deal" in order to rule out that possibility. Detective Breeden was not aware of any bullets or bullet casings being recovered at Archway Apartments.

Officer Bill Miller of the Dickson Police Department met with the victim at Wal-Mart immediately following the incident. According to Officer Miller's report, dated December 31, 2001, the victim drove to Archway Apartments to visit a friend. The victim was then approached by a man in the parking lot of the apartment complex. The man asked the victim for a ride to Wal-Mart, and the victim refused. The man then grabbed the victim by the shirt, pointed a gun at the victim, and said, "give it up." The victim then pushed the gun away and jumped out of the truck. The victim heard one gunshot as he ran from the scene.

Defendant testified that on December 31, 2001, he was riding with Ecedro Vasquez in Mr. Vasquez' truck. Mr. Vasquez stopped at Texaco to fill his truck with gas. Defendant went inside the store to buy a cigar. As he exited the store, the victim asked him about the cigar he was holding. The victim asked Defendant if he knew where to buy some marijuana. Defendant did not respond at first because he thought the victim might be a police officer. Defendant got inside Mr. Vasquez' truck. Defendant then decided to sell some drugs to the victim. He told Mr. Vasquez to go ahead without him, and he walked over to the victim's truck and got inside. They drove to Archway Apartments. Defendant sold the victim some marijuana for twenty dollars on the way to the apartments. When they arrived at the apartments, Defendant went inside an apartment where he received a substance that he represented to the victim to be, but that in fact was not, one gram of crack cocaine. Defendant then asked the victim if he would "rent" his truck to him. The victim agreed, and in exchange for his use of the victim's vehicle for one hour, Defendant gave the victim what he knew were "bad drugs." Defendant testified that he knew the victim would call the police because Defendant had given the victim "drugs that [were] not real for his vehicle." Defendant testified that he did not use a gun. Defendant did not return the victim's truck because he feared that the victim was calling the police. Defendant drove the victim's truck to General Hospital in Nashville to see his baby's mother. Defendant testified that he did not intend to return the victim's truck within an hour. Defendant later abandoned the truck on the side of the road in Nashville.

**Sufficiency of the Evidence**

When evaluating the sufficiency of the evidence, we must determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Keough*, 18 S.W.3d 175, 180-81 (Tenn. 2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). This Court must afford the prosecution the strongest legitimate view of the evidence in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Keough*, 18 S.W.3d at 181 (citing *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). Questions regarding the credibility of the witnesses, the weight to be given the evidence, and any factual issues raised by the evidence are resolved by the trier of fact. *Bland*, 958 S.W.2d at 659. A guilty verdict removes the presumption of innocence and replaces it with one of guilt. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). On appeal, the defendant has the burden of proving that the evidence at trial was insufficient to convict. *Id.*

Defendant was convicted by a jury of aggravated robbery and theft. The trial court merged the two counts into a single count of aggravated robbery. "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). The robbery is aggravated by the use of a deadly weapon. Tenn. Code Ann. § 39-13-402(a)(1).

The proof at trial showed that after the victim drove Defendant to Archway Apartments, Defendant pointed a gun at the victim, and the victim ran away in fear. Defendant then took the victim's truck without the victim's consent. On appeal, Defendant argues that he did not intend to take the victim's truck. Based on Defendant's own testimony at trial, however, a jury could reasonably conclude that Defendant intended to take the victim's truck. Defendant testified that he intended to drive the victim's truck to Nashville to see his baby's mother in the hospital. Even if the jury accredited Defendant's testimony that the victim gave Defendant permission to use his truck for one hour in exchange for cocaine, the jury could have found that Defendant did not intend to return the truck within the agreed upon time period. Furthermore, Defendant testified that he did not intend to return the victim's truck because he feared that the victim would call the police. The jury apparently accredited the victim's testimony and discredited Defendant. Finally, viewed in the light most favorable to the State, the proof at trial showed that Defendant used a gun. Defendant is not entitled to relief on this issue.

**Sentencing**

A defendant's sentence is reviewed by the appellate courts *de novo* with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d); *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002). For this presumption to apply to the trial court's actions, there must be an affirmative showing in the record that the trial court considered sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). While determining or reviewing a sentence, the courts must consider: (1) the evidence received at trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence offered by the parties on the enhancement and mitigating factors; (6) any statement the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103(5), -210(b); *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991).

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; *Ashby*, 823 S.W.2d at 169. If the trial court has imposed a lawful sentence by following the statutory sentencing procedure, has given due consideration and proper weight to the factors and sentencing principles, and has made findings of fact adequately supported by the record, this Court may not modify the sentence even if it would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, if the trial court does not comply with

statutory sentencing provisions, our review of the sentence is *de novo* with no presumption the trial court's determinations were correct. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000).

Aggravated robbery is a Class B felony, which carries a sentencing range of eight to twelve years for a Range I standard offender. Tenn. Code Ann. §§ 39-13-402(b), 40-35-112(a)(2). The presumptive sentence is the minimum sentence in the range if there are no enhancement factors and no mitigating factors. Tenn. Code Ann. § 40-35-210(c). If such factors do exist, a trial court should enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e); *State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). If there are enhancement factors, but no mitigating factors, a trial court may set the sentence above the minimum within the range. Tenn. Code Ann. § 40-35-210(d); *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002). The statutes prescribe no particular weight for an enhancement or mitigating factor, and the weight given to each factor is left to the discretion of the trial court, provided the trial court has complied with the purposes and principles of the Sentencing Act and its findings are supported by the record. *State v. Gosnell*, 62 S.W.3d 740, 750 (Tenn. Crim. App. 2001); *State v. Zonge*, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997).

The trial court sentenced Defendant to serve ten years in confinement, the midpoint in the range of possible sentences. The trial court found the following enhancement factors applicable to Defendant's sentence: the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, Tenn. Code Ann. § 40-35-114(2); and the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult, Tenn. Code Ann. § 40-35-114(21). The trial court placed significant weight on Defendant's juvenile adjudication for a charge of aggravated robbery, the same charge for which he was convicted in this case. Defendant does not challenge the trial court's application of those enhancement factors, and we conclude that the application of those enhancement factors is supported by the record.

Defendant argues that the trial court erred by not applying a mitigating factor, applicable under the catch-all provision of Tenn. Code Ann. § 40-35-113(13). Defendant contends that his learning disability, documented in his juvenile court record, should have mitigated his sentence. We conclude that the trial court did not err in declining to apply this mitigating factors. We further conclude that a sentence of ten years was appropriate in this case. Defendant is not entitled to relief on this issue.

**CONCLUSION**

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE