# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 1, 2009

## STATE OF TENNESSEE v. ERIC HUBBARD

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-06938     W. Mark Ward, Judge**

---

**No. W2009-00977-CCA-R3-CD  - Filed May 27, 2010**

---

A Shelby County jury found the defendant guilty of carjacking, a Class B felony, and the trial court sentenced him to ten years, six months, in the Tennessee Department of Correction. On appeal, the defendant argues that (1) the evidence was insufficient to support his conviction, and (2) the trial court improperly weighed the enhancement and mitigating factors in sentencing. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Brett B. Stein (on appeal) and James Marty (at trial), Memphis, Tennessee, for the appellant, Eric Hubbard.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Chris Lareau, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

A Shelby County grand jury indicted the defendant on two counts: carjacking, a Class B felony, and theft over $1,000, a Class D felony. The state dismissed the theft over $1,000 charge prior to trial. The state presented the following evidence at the January 2009 trial.

Cecelia Jarvis testified that she had been charged in this case with theft of property, but she pled guilty and received probation. She later violated her probation and served her

sentence. She worked as a prostitute at the truck stop at Lamar Avenue and Shelby Drive, and she met the defendant when he patronized her. They later became friends. Ms. Jarvis said that on the morning of May 6, 2007, the defendant came to the truck stop, and she asked him to take her somewhere to buy crack cocaine. They left the truck stop in the defendant's blue truck, accompanied by Jimmie Jones, whom Ms. Jarvis was dating at the time. Ms. Jarvis was asleep until the defendant's truck collided with a red car. She did not know who caused the accident. She saw the defendant "arguing with some folks, and he grabs one Mexican and he helps him out of the car and then another one, and then he jumps in the car . . . ." Ms. Jarvis said that the accident blocked the car's driver-side door, so the defendant helped the car's passengers out from the passenger-side door. At that point, the defendant got into the car and drove away, and the car's passengers were standing on the side of the road. Ms. Jarvis followed the defendant in his truck. The defendant stopped on a side street, took a boom box out of the car, and put it in his truck. When he was unsuccessful in also removing the car's stereo, he got into his truck and told Ms. Jarvis and Mr. Jones that he was going to Mississippi. Ms. Jarvis and Mr. Jones then got into the car and went to look for drugs.

On cross-examination, Ms. Jarvis testified that the police arrested her on May 6 when they found her driving the red car. She agreed that she told the police in her statement that she planned to return the car to "the Mexicans." Ms. Jarvis explained that she was going to buy cocaine and then "head the car back" to where the accident occurred. She did not see the defendant "strike or harm" the car's passengers, and she could not tell what the defendant was saying to them.

The victim in this case, Herminio Peres, testified, through an interpreter, that he was from Guatemala and had lived in the United States illegally for four years. On May 6, 2007, he was driving his red Ford Probe on Knight Arnold Road, accompanied by two friends, when the defendant's truck struck his car on the driver's side. Mr. Peres said that two black men got out of the truck. "They . . . screamed that [he] needed to get out of the car. They put their hands on [his] neck and gave [him] a fright." One man pulled the keys out of Mr. Peres's car, and Mr. Peres exited his car from the passenger-side door because the defendant's truck was blocking his door. Mr. Peres called the police, and one of the men drove away in Mr. Peres's car.

Mr. Peres identified Cecelia Jarvis as being present at the scene of the accident and testified that she stayed in the defendant's truck. Mr. Peres said that he did not attempt to move his car after the accident. He understood when the man, in English, told him to get out of the car, but Mr. Peres could not understand everything that the man said. Mr. Peres testified that the man did not ask for his driver's license or insurance. The police arrived fifteen to twenty minutes after the accident, and Mr. Peres told them that someone stole his car and described the car. He stayed at the scene of the accident, and thirty minutes later, a

patrol car came to take him to where the police had recovered his car. Mr. Peres testified that Ms. Jarvis and a man were present at that location. Mr. Peres went to the Criminal Justice Complex to make a statement, and he identified the defendant in a photospread. He wrote on the photospread, in Spanish, "This looks like the one who robbed me." At the preliminary hearing, Mr. Peres was unable to identify the man who took his car. Mr. Peres said that, a few months before trial, he saw a man at a gas station at Lamar Avenue and Shelby Drive who pointed at Mr. Peres and told a companion that he had hit Mr. Peres.

On cross-examination, Mr. Peres testified that he was afraid of the defendant because of the accident, which Mr. Peres said was intentional, and not because he was afraid the government would deport him. He said the defendant choked him by slamming his arm against Mr. Peres's throat. On re-direct examination, Mr. Peres testified that the man who choked him and took his car was the driver of the truck. On recross-examination, Mr. Peres said that the police did not show him a photo of Jimmie Jones.

Jimmie Lee Jones, Jr. testified that he knew the defendant because he sold drugs to the defendant at the truck stop on Lamar Avenue and Shelby Drive. On May 6, 2007, Mr. Jones was suffering from a broken jaw. He and Ms. Jarvis asked the defendant to take Mr. Jones to a hospital and take both of them to a hotel room. The defendant agreed but wanted to find drugs to buy first. They were driving to Mrs. Winner's restaurant so that Mr. Jones could buy food when Mr. Peres's car hit the defendant's truck. Ms. Jarvis was asleep at the time. Mr. Jones said that Mr. Peres put his car into reverse, and the defendant moved his truck to block Mr. Peres from leaving. The defendant was "irate" and got out of his truck. Mr. Jones said he stayed in the truck. The defendant "snatched the keys out of the car," and the car's occupants "got out and walked off." The defendant went back to his truck to ask Ms. Jarvis to follow him, and then he drove away in the car. Ms. Jarvis and Mr. Jones followed him until he parked near Sheffield High School. The defendant removed a "kick box" from the car and put it in his truck. He told Ms. Jarvis and Mr. Jones that he would not take them anywhere because he was going to Mississippi to see his son. The defendant departed in his truck. Ms. Jarvis said she would drive them where they needed to go, so they left in the car. The police pulled them over on Perkins Road and arrested them. Mr. Jones described the defendant to police and took them by the defendant's house, but the defendant was not there. Eventually, the state charged Mr. Jones with facilitation of a felony carjacking, and he pled guilty to theft under $500.

On cross-examination, Mr. Jones testified that he and the defendant did not discuss carjacking that morning or on any previous occasion. He recalled that the defendant asked the occupants of the red car how they would pay for the damage to his truck. Mr. Jones did not see the defendant choke anyone. He said the occupants of the red car exited the car and "walked up Knight Arnold . . . . They was [sic] still in the vicinity . . . at the corner or

something." Mr. Jones testified that the defendant did not tell him and Ms. Jarvis what to do with the car; he abandoned it "into [Mr. Jones] and Ms. Jarvis's custody."

On re-direct examination, Mr. Jones testified that Mr. Peres looked worried when the defendant approached him. According to Mr. Jones, the defendant told Mr. Peres, "This is my car now."

Officer Tim Henderson, a patrolman with the Memphis Police Department, testified that he responded to the accident scene at Lamar Avenue and Knight Arnold Road on May 6, 2007. There were no vehicles at the scene. Officer Henderson said that Mr. Peres did not speak much English, but Officer Henderson understood that someone had taken Mr. Peres's red Ford Probe. Officer Henderson broadcast the description of the car, and another officer spotted the car driving on Perkins Road. That officer stopped the car, and Officer Henderson took Mr. Peres and his two passengers to Perkins Road. Officer Henderson arrested Ms. Jarvis and Mr. Jones. Mr. Peres provided the title of the car, and Officer Henderson matched the vehicle identification number on the car to the number on the title. Officer Henderson said the title was not in Mr. Peres's name, but his investigation did not indicate that Mr. Peres was in possession of the car illegally. Officer Henderson and another officer transported Ms. Jarvis and Mr. Jones in separate vehicles to the Criminal Justice Complex.

On cross-examination, Officer Henderson said that he responded to a reported carjacking rather than a traffic accident. Officer Henderson did not ask Mr. Peres about his immigration status or whether he had a driver's license.

Sergeant Timmie Wilson, of the Memphis Police Department's Safe Streets Task Force, testified that he was the lead investigator in this case. Sergeant Wilson said that another officer, Detective Frijas, interviewed Mr. Peres and his passengers, and Detective Frijas showed Mr. Peres a photo-lineup. Sergeant Wilson determined that Mr. Peres's identification of the defendant was tentative because Mr. Peres "was not completely sure." Sergeant Wilson arrested the defendant based on the statements of Mr. Jones and Ms. Jarvis. Sergeant Wilson read the defendant his rights, and the defendant agreed to make a statement. The defendant told Sergeant Wilson that a small car hit him on Knight Arnold Road. When he got out of his vehicle, the passengers of the car walked away. The defendant told Sergeant Wilson that Mr. Jones drove away in the red car. When Sergeant Wilson confronted the defendant with the witnesses' statements, the defendant replied, "You-all do what you got to do. I am a man and can do my time." Sergeant Wilson did not prepare a written statement for the defendant because the defendant ended the interview and requested to be taken to the jail.

On cross-examination, Sergeant Wilson testified that the Memphis Police Department's policy is to not record statements. He denied yelling at the defendant.

Sergeant Wilson said the defendant ended the interview when faced with witnesses' statements that were inconsistent with his statement.

After deliberations, the jury found the defendant guilty of carjacking. The trial court held a sentencing hearing on March 6, 2009, at which the defendant testified.

On direct examination, the defendant said that Mr. Peres had changed his statement between the preliminary hearing and the trial. The defendant agreed that a jury convicted him of carjacking, but he said "[he did not] see how it could be carjacking on [his] behalf" and "[he was] just sorry for even being [himself] right now." The defendant told the court that "[i]t was all a mistake . . . [he] lost [his] head . . . [he] was just thinking about reimbursement . . . ." He said that he would tell his son, if his son were in his place, to change his life. On cross-examination, the defendant said "[he had] been proven guilty for something [he] had done[,]" but "[he did not] know whether [he had] taken a car . . ." He agreed that he was on probation in Mississippi for kidnapping. On re-direct examination, the defendant said that Mr. Jones had a broken jaw because he had gotten into an altercation with a truck driver.

The trial court then questioned the defendant. The defendant admitted to several misdemeanors in Tennessee, Mississippi, and Illinois. He used marijuana for seven years before quitting in either 2003 or 2004. The defendant said that he knew Ms. Jarvis and Mr. Jones because he kept his semi-truck at the truck stop, but he had never patronized Ms. Jarvis and had not bought drugs from Mr. Jones. The defendant said that on May 6, 2007, he was taking Mr. Jones to Mrs. Winner's restaurant to be dropped off there.

The parties stipulated that the defendant was a Range I offender and that he committed the carjacking while on probation in Mississippi. The trial court found that the defendant had a previous history of criminal convictions or criminal behavior, the defendant was a leader in the commission of an offense, and the defendant was on probation when he committed the offense. The court found no mitigating factors but placed "great weight" on the fact that the defendant committed the offense while on probation or parole. The trial court sentenced the defendant as a Range I offender to ten years, six months. The defendant then filed this timely appeal.

**Analysis**

On appeal, the defendant challenges the sufficiency of the evidence and his sentence. Specifically, he contends that the inconsistency between Ms. Jarvis and Mr. Jones's testimonies rendered the evidence insufficient to support a conviction for carjacking. He also argues that the trial court placed too much emphasis on the fact that he committed the offense while on probation because the defendant's remorse was a mitigating factor to weigh against

the enhancement factors. The state responds that the evidence was sufficient, that the trial court properly found that no mitigating factors applied, and that this court cannot review the trial court's weighing of enhancement and mitigating factors.

*Sufficiency of the Evidence*

Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558; *Tuggle*, 639 S.W.2d at 914. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002); *Bland*, 958 S.W.2d at 659. Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *See State v. Elkins*, 102 S.W.3d 581, 582 (Tenn. 2003); *Reid*, 91 S.W.3d at 277.

To sustain the defendant's conviction for robbery, the state had to prove beyond a reasonable doubt that the defendant intentionally or knowingly took a motor vehicle from the possession of another by use of a deadly weapon or force or intimidation. Viewing the evidence in the light most favorable to the state, we conclude that the evidence was sufficient to support the defendant's conviction for carjacking. The evidence at trial established that the defendant and Mr. Peres were involved in a vehicle collision. The defendant got out of his truck and began screaming at Mr. Peres and his passengers. He reached into Mr. Peres car, choked him, and took the keys out of the ignition. Once Mr. Peres was out of the vehicle, the defendant drove away in Mr. Peres's car.

The jury's verdict accredited the state's witnesses and resolved any conflicts in favor of the state. *Harris*, 839 S.W.2d at 75. The defendant's conduct in yelling at Mr. Peres, choking him, and then driving away in Mr. Peres's car satisfied the elements of carjacking,

and, thus, the state's evidence was sufficient to sustain his conviction for carjacking. The defendant is, therefore, without relief as to this issue.

*Sentencing*

An appellate court's review of a challenged sentence is *de novo* on the record with a presumption the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The Sentencing Commission Comments to this section of the statute indicate the defendant bears the burden of establishing the sentence is improper. When the trial court follows the statutory sentencing procedure and gives due consideration to the factors and principles relevant to sentencing, this court may not disturb the sentence. *See State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008).

Prior to the 2005 amendments to the 1989 Sentencing Act, in sentencing a defendant, a court was to begin at the mid-point of the statutory range and then apply the appropriate enhancement and mitigating factors. Pursuant to the 2005 amendments, our Sentencing Act has abandoned the statutory minimum sentence and renders enhancement and mitigating factors advisory only. *See* Tenn.Code Ann. §§ 40-35-114, -35-210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" which the trial court is required to consider but is not bound by. *See* Tenn.Code Ann. § 40-35-210(c). Although the application of factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court is also required to place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, to ensure fair and consistent sentencing." *Id.* § 40-35-210(d).

The weight given to each enhancement or mitigating factor is in the discretion of the trial court, assuming the trial court has complied with the purposes and principles of the sentencing act and its findings are supported by the record. *See State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The statutes prescribe no particular weight for an enhancement or mitigating factor. *State v. Gosnell*, 62 S.W.3d 740, 750 (Tenn. Crim. App. 2001). A defendant's sentence "is not determined by the mathematical process of adding the sum total of enhancing factors present then subtracting from this figure the mitigating factors present for a net number of years." *State v. Alder*, 71 S.W.3d 299, 306 (Tenn. Crim. App. 2001) (quoting *State v. Boggs*, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996)).

The defendant avers that the trial court should have found that the defendant's remorse was a mitigating factor and weighed that mitigating factor against the enhancement factors. The trial court determined that no mitigating factors applied, and the record supports its determination because the defendant continued to deny responsibility for the carjacking

when he testified at the sentencing hearing. We conclude that the defendant did not express genuine remorse; therefore, the trial court did not err in failing to consider remorse as a mitigating factor. The weight assigned to each enhancement factor is a matter that the legislature has left to the discretion of the trial court. *See Carter*, 254 S.W.3d at 345. The record shows that the trial court followed the appropriate sentencing procedure and considered the relevant facts and circumstances of the offense; therefore, this court will not disturb the trial court's sentence. *See id.* The defendant is without relief as to this issue.

## Conclusion

Based on the foregoing reasons, we affirm the judgment of the trial court.


_____
J.C. McLIN, JUDGE