IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 10, 2006

**STATE OF TENNESSEE v. JOHNNY E. PORTER**

**Direct Appeal from the Circuit Court for Hardin County**
**No. 8392     C. Creed McGinley, Judge**

—————————

**No. W2005-01389-CCA-R3-CD  - Filed February 15, 2006**

—————————

The defendant, Johnny E. Porter, was convicted of possession of over .5 grams of a Schedule II controlled substance (cocaine) with intent to sell, a Class B felony, and possession of marijuana, a Class A misdemeanor.  He received concurrent sentences of nine years and eleven months, twenty-nine days on the charges, respectively.  On appeal, the defendant contests the sufficiency of the evidence and contends that the trial court erred in enhancing his sentence on Count One from eight years to nine years based solely upon his prior criminal record.  Upon review, we affirm the conviction and sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and ALAN E. GLENN, JJ., joined.

Guy T. Wilkinson, District Public Defender, and Richard W. DeBerry, Assistant Public Defender, for the appellant, Johnny E. Porter.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Robert G. Radford, District Attorney General; and John W. Overton, Jr., Chief Deputy District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At trial, Brian Rich testified that he was employed with the Savannah Police Department in August 2004, and was on patrol at the Savannah Motel when he noticed someone jump behind a fence in an attempt to hide from him.  Upon his request, a woman identified as Jennifer Arnold emerged from behind the fence and told him that she was staying in room thirty-two of the motel. Officer Rich and accompanying deputy Charles White received Arnold's permission to approach the room and confirm the veracity of her statement.

As the door opened, the officers detected a strong odor of marijuana and obtained Arnold's permission to conduct a consensual search of the room. When the defendant opened the door, Jonathan and Crystal Bennett were sitting on the bed, and a fourth individual, eventually identified as Bernard Wallace, was in the bathroom. Officer Rich noticed drug paraphernalia (brillo pads and a crack pipe) in plain view on top of the television and discovered bags of what he believed to be marijuana and crack cocaine behind the cushions of the couch.

Because no one claimed ownership of the substances, all five individuals were arrested, and the seized contraband was sent to the Tennessee Bureau of Investigation (TBI) crime lab for identification and to be weighed. As the subjects were being transported to the jail, Officer Rich learned from the manager of the motel that the room was actually reserved by Ashley Morris, who was not found in the room at the time of the search. On cross-examination, Officer Rich acknowledged that the defendant was not found to have any drugs or a significant amount of money on his person and did not attempt to flee. Deputy White testified on cross-examination that there was evidence of consumption in the room, including the pipes which were found in plain view.

Jennifer Arnold testified that she went to the motel, upon invitation from Bernard Wallace, to smoke marijuana and crack cocaine. When she arrived, Ashley Morris and the defendant were present. Wallace arrived shortly thereafter. Sometime later, Ashley Morris left and Crystal and Jonathan Bennett arrived. Arnold testified that Wallace gave the defendant an $80 rock of crack cocaine to sell but that the defendant returned without the money or the drugs. She further stated that she went outside to deliver a $70 rock of crack cocaine but did not complete the transaction because Officer Rich approached her and she threw the rock away. Upon questioning by Officer Rich, she advised him that she was staying in room thirty-two and was outside to get "a breath of fresh air." Arnold stated that she assumed Wallace brought the drugs to the motel room.

On cross-examination, Arnold testified that she arrived at the motel between 10:00 and 10:30 p.m. and was high on crack cocaine by the time the other individuals arrived. Arnold reiterated that Wallace handed the defendant what she believed was an $80 rock of crack cocaine, which the defendant put in his pocket before leaving with Crystal Bennett. She stated that when the defendant came back without the drugs or money, he and Wallace "had words back and forth" regarding the incident, but the defendant had no explanation for Wallace. She testified that the only transaction she attempted to make failed because the police arrived. On redirect examination, Arnold acknowledged a prior intimate relationship with Wallace but indicated that her testimony related "the way that it happened."

Ashley Morris testified that she reserved room thirty-two at the Savannah Motel "mostly to get high." She stated that she and Wallace, who provided the cocaine, were later joined by the defendant and Arnold. Morris recalled that Ricky Hutton picked her up from the motel and drove her home before the police arrived. On cross-examination, she stated that she rented two rooms on the day of the incident, the first with the defendant, and the second for Wallace. She reiterated that Wallace was the only person that she saw bring drugs into the motel.

Crystal Bennett testified that she and her husband, Jonathan, had been at the Savannah Motel approximately forty-five minutes when the police arrived. She stated that the defendant brought a rock of crack cocaine to their home earlier in the day and invited them to a party at the motel that night. Bennett recalled that she used cocaine while at the motel and that she left with the defendant sometime during the evening to purchase cigarettes. She further stated that she drove the defendant to a house behind the jail at his request before returning to the motel. When the defendant came back to the motel sometime later, he spoke with Wallace who "wasn't very happy with [the defendant]." Thereafter, Arnold left the room to deliver drugs to someone outside, and "[a] few minutes later, the law showed up." Bennett stated that the defendant announced that the police were outside and that Wallace subsequently flushed the cocaine down the toilet before the police conducted a search of the room.

Jessica Webb testified that she is employed by the TBI as a forensic scientist. She stated that, upon analysis, she determined the substances submitted in the present case consisted of thirty-one grams of marijuana and 8.9 grams of cocaine base. She particularly noted that the amount of cocaine seized was "probably greater than normal."

As the final witness at trial, the defendant testified that he went to the Savannah Motel between 2:00 and 2:30 p.m. to talk to Bernard Wallace about "[going] somewhere and getting high." He stated that he used drugs at the motel but was not there to deliver drugs or purchase drugs to resell. The defendant recalled that he invited Crystal and Jonathan Bennett to the party earlier that day and that he gave Jonathan Bennett a small rock of crack cocaine at that time. He stated that Crystal Bennett drove him across town so that he could tell an individual he identified as Nebo that he did not have any drugs to sell. He further indicated that he did not use or deliver any drugs while at Nebo's house. The defendant explained that Wallace handed him drugs in jest before he left but that he immediately returned them to him.

On cross-examination, the defendant testified that he used both marijuana and crack cocaine in the motel room. The defendant acknowledged that he gave a rock of crack cocaine to Jonathan Bennett but stated that he was not paid for the drugs and that Wallace did not send him there. On redirect examination, the defendant testified that he did not go to the Bennett residence with the intention of selling drugs or delivering drugs to sell. He further reiterated that he went to Nebo's house to tell them that he did not sell drugs and to tell them to stop calling him.

## I. Sufficiency

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. Id. In State v. Grace, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

The conviction offenses require proof that the defendant knowingly possessed over .5 grams of cocaine with intent to sell it and that he knowingly possessed marijuana. See T.C.A. §§ 39-17-417(a)(4) -(c)(1); 39-17-418(a). Possession may be actual or constructive. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). To prove constructive possession, the State must establish the defendant had the power and intention at a given time to exercise dominion and control over the drugs either directly or through others. Id. at 903; see also State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997).

Presence in the area of the drugs or association with those possessing drugs, alone, is not sufficient to establish constructive possession. State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Further, pursuant to Tennessee Code Annotated section 39-17-419, "[i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing."

On appeal, the defendant particularly contends that Arnold's testimony was insufficient due to her lack of credibility. However, as we have noted, the credibility of witnesses is to be determined by the trier of fact and not this court. Taken in a light most favorable to the State, the evidence established that Wallace gave the defendant an $80 rock of crack cocaine to sell; that the defendant left with Crystal Bennett; and that Wallace was upset when the defendant returned without the drugs or money. Furthermore, it was undisputed that the seized contraband included 8.9 grams of cocaine base. In our view, the testimony of Arnold and Bennett, taken together with the amount of cocaine seized, was sufficient to convict the defendant of knowingly possessing more than .5 grams of cocaine with intent to sell.

We likewise conclude that sufficient evidence existed to convict the defendant of simple possession of marijuana. Officer Rich and Deputy White indicated that a strong odor of marijuana emanated from the room occupied by the defendant, and Jessica Webb testified that thirty-one grams of marijuana were seized upon the consensual search. Moreover, the defendant admitted to using marijuana while in the room, thereby exercising direct control over it. For these reasons, we affirm the convictions.

## II. Sentencing

Second and finally, the defendant contends that the trial court erred in sentencing him to nine years on Count One based solely upon his prior criminal record. The weight given to each enhancement or mitigating factor is in the discretion of the trial court, assuming the trial court has complied with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Madden, 99 S.W.3d 127, 138 (Tenn. Crim. App. 2002). The statutes prescribe no particular weight for an enhancement or mitigating factor. State v. Gosnell, 62 S.W.3d 740, 750 (Tenn. Crim. App. 2001). "[A] defendant's 'sentence is not determined by the mathematical process of adding the sum total of enhancing factors present then subtracting from this figure the mitigating factors present for a net number of years.'" State v. Alder, 71 S.W.3d 299, 306 (Tenn. Crim. App. 2001) (quoting State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996)).

The defendant challenges his sentence for possession of over .5 grams of a Schedule II controlled substance (cocaine) with intent to sell, a Class B felony, which carries a Range I penalty of between eight and twelve years. The trial court began with the presumptive minimum sentence of eight years and enhanced the sentence to nine years based upon the application of enhancement factor (2), the defendant's previous history of criminal convictions. See T.C.A. § 40-35-114(2). The trial court specifically noted that:

> [The defendant has] two prior felony convictions. One of them is, actually, the sale of a drug, marijuana. The conviction time was 1989. He's also got a robbery conviction back in 1982. After those, as late as 2004, there's a simple possession of marijuana. Other than that, the records are not significant, but there are two prior felonies as well as a late charge on the marijuana in this case.
>
> Considering his prior - or starting at the statutory minimum of eight years and considering his prior criminal history in this case, the Court feels that the appropriate sentence in this case is nine years. I'm not going to enhance him beyond that.

Upon review, we conclude that the defendant's prior criminal record, which includes two prior drug-related offenses, justified the trial court's one-year enhancement of his sentence.

-5-

<u>Conclusion</u>

Based upon the foregoing, we affirm the judgment and sentence of the Circuit Court of Hardin County.


_____
JOHN EVERETT WILLIAMS, JUDGE