IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 8, 2008

## STATE OF TENNESSEE v. JEFFREY LEE TURNER

**Appeal from the Humboldt Law (Circuit) Court for Gibson County**
**No. H 8319      Clayburn Peeples, Judge**

---

**No. W2007-01364-CCA-R3-CD  - Filed May 8, 2008**

---

The Appellant, Jeffrey Lee Turner, appeals the sentencing decision of the Humboldt Law Court for Gibson County. Turner pled guilty to one count of aggravated statutory rape, fifteen counts of statutory rape, and two counts of contributing to the delinquency of a minor. After a sentencing hearing, the trial court sentenced Turner to an effective term of eleven years, eleven months, and twenty-eight days. On appeal, Turner challenges the length of his sentences, specifically alleging (1) that the trial court misapplied enhancement and mitigating factors and (2) that the trial court erred in imposing partial consecutive sentences. After a thorough review of the record and the briefs of the parties, we affirm.

**Tenn. R. App. P. 3; Judgment of the Humboldt Law Court for Gibson County Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. McLIN, JJ., joined.

Mike Mosier, Jackson, Tennessee, for the Appellant, Jeffrey Lee Turner.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Garry G. Brown, District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background & Procedural History

On October 10, 2006, a Gibson County grand jury returned an eighteen-count indictment charging the Appellant with one count of aggravated statutory rape, a Class D felony; fifteen counts of statutory rape, Class E felonies; and two counts of contributing to delinquency of a minor, Class A misdemeanors. The indictment alleged that the sexual offenses involved two minor male victims, M.T. and R.G.,[1] and that the offenses occurred on numerous dates from December of 2004 to July of 2006. The misdemeanor counts for contributing to delinquency of a minor corresponded to the

---

[1]It is the policy of this court to refer to minor victims of sexual crimes by their initials.

Appellant's purchase of alcohol for victim M.T. and another minor, J.E., on July 15, 2006. On January 26, 2007, the Appellant waived his right to jury trial and entered "open" pleas of guilty to all of the indicted offenses.

The transcript of the guilty plea hearing is not included in the record on appeal, but the facts established at the sentencing hearing and by the presentence investigative report, are as follows. The Appellant was between thirty-two and thirty-four years old when he committed the offenses during the time period from December of 2004 to July of 2006, and the minor victims, M.T. and R.G., were between the ages of sixteen and seventeen. During this period, the Appellant was a tax preparer for the parents of M.T., and he also worked in their travel agency as an office manager.

The presentence report reflects that a police investigation was initiated based upon the complaint of M.T.'s mother that the Appellant had engaged in inappropriate contact with her son. M.T. informed police that the Appellant had performed oral sex on him on at least three occasions between January and April of 2006 at his parents' business. The Appellant admitted to police that he performed oral sex on M.T. "during tax season" at the business location on more than one occasion, that he additionally performed oral sex on M.T. at another Gibson County address, and that on another occasion in July of 2006 at a residence under construction in Medina. Another victim, R.G., informed police that the Appellant had fondled him and performed oral sex on him at the aforementioned business location during the week of December 20, 2004, and January 5, 2005. R.G. additionally stated that the Appellant performed oral sex on him at least five or six times between January and April of 2005, and again between January and April of 2006 at the business location. The Appellant further admitted that on July 15, 2006, he purchased two cases of "Bud Light" beer and two six-packs of "Smirnoff Triple Black," for $55, and delivered the alcoholic beverages to the minor, J.E., behind the convenience store where it was purchased. The Appellant stated that J.E. paid him $21 for the alcoholic beverages. The Appellant additionally stated that he purchased the alcoholic beverages for both J.E. and M.T.

At the sentencing hearing held on May 29, 2007, the Appellant testified that the offenses "were consensual incidents." He recalled that the sexual incidents with R.G. occurred first, and he claimed:

> [R.G.] had came onto me [sic] and . . . the state of mind I was in, I was just not in the right state of mind and allowed it to continue and then the incidents with [M.T.] occurred due to the fact that [M.T.] and [R.G.] were also messing with each other and that allowed me to be able to mess with [M.T.].

The Appellant claimed to have been sexually abused by his stepfather between the ages of eight and fifteen years old. On cross-examination, the Appellant denied that he was blaming anyone for the crimes he committed, but he stated that he "felt that [his own molestation] may have had an impact on how [he] lived [his] lifestyle." The Appellant acknowledged that he was recently arrested in Madison County for possession of methamphetamine with intent to sell or deliver, possession of a

Schedule III drug with intent to sell or deliver, possession of a Schedule IV drug with intent to sell or deliver, and possession of drug paraphernalia.

At the conclusion of the sentencing hearing, the trial court imposed the maximum sentence of four years for the aggravated statutory rape conviction, the maximum sentence of two years for each of the fifteen convictions for statutory rape, and the maximum sentence of eleven months and twenty-nine days for each of the two misdemeanor convictions for contributing to the delinquency of a minor. The trial court ordered that the sentences for counts one, two, six, seven, seventeen, and eighteen run consecutively, with the remaining counts running concurrently, resulting in an aggregate sentence of eleven years, eleven months, and twenty-nine days.

**Analysis**

The Appellant challenges the length of the sentence imposed by the trial court, specifically its application of enhancement and mitigating factors and its decision to impose consecutive sentencing. When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d) (Supp. 2005). The burden is on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Comments. This means that if the trial court followed the statutory sentencing procedure, made findings of facts that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing, we may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court that are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a *de novo* review of a sentence, we must consider: (1) any evidence received at the trial and/or sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancement factors; (6) any statements made by the defendant on his or her own behalf; and (7) the potential for rehabilitation or treatment. T.C.A. § 40-35-210 (Supp. 2005); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

**I. Enhancement and Mitigating Factors**

The Appellant contends that the trial court misapplied enhancement and mitigating factors to increase each of his sentences to the maximum term within the applicable ranges. Counsel for the Appellant conceded at sentencing that enhancement factor (14), "[t]he defendant abused a position of public or private trust[,]" was applicable. *See* T.C.A. § 40-35-114(14) (Supp. 2005). However, the Appellant now contends that, in addition to considering this single factor, the trial court erroneously applied two additional factors, specifically enhancement factor (3), "[t]he offense involved more than one (1) victim," and enhancement factor (4), "[a] victim of the offense was particularly vulnerable because of age or physical or mental disability." *See id.* at (3), (4). He

-3-

additionally contends that the trial court erred in rejecting all of his proposed mitigating factors except for factor (1), "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury." *See* T.C.A. § 40-35-113(1) (Supp. 2005). The Appellant submits that the rejected factors, "[s]ubstantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense," *see id.* at (3), and "[t]he defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense," *see id.* at (8), should have been applied due to his own alleged sexual abuse as a child.

The State argues that the Appellant has waived his claims on appeal for failure to include the guilty plea hearing transcript in the record. Alternatively, the State argues that the record demonstrates that the trial court determined that the single enhancement factor significantly outweighed the single mitigating factor and that it appropriately enhanced each of the Appellant's convictions to the statutory maximum for each conviction.

Aggravated statutory rape constitutes a Class D felony. T.C.A. § 39-13-506(d)(3) (2006). For a Range I, Standard Offender, the sentence range for this offense is two to four years. The trial court imposed a four-year sentence for this conviction of the Appellant. Statutory rape constitutes a Class E felony. T.C.A. § 39-13-506(c). For a Range I, Standard Offender, the sentence range for this offense is one to two years. The trial court imposed sentences of two years for each of these convictions. For each of the two convictions for contributing to the delinquency of a minor, a Class A misdemeanor, *see* T.C.A. § 37-1-156 (2006), the trial court imposed a sentence of eleven months and twenty-nine days in the county jail.[2]

At the conclusion of the sentencing hearing, the trial court stated:

> Let me start with mitigating factors. You have listed three, the first of which is that the [Appellant's] conduct neither caused nor threatened serious bodily injury. I think the State would concede that that mitigating factor does, in fact, exist under the current definitions of serious bodily injury.
>
> I do not think that substantial grounds exist to excuse or justify or explain the [Appellant's] actions, nor do I believe that they were caused by the fact that he was suffering from any mental or physical condition that significantly reduced his

---

[2]This court has held that

[t]he misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. . . . However, in determining the percentage of the sentence to be served in actual confinement, the court must consider enhancement and mitigating factors as well as the purposes and principles of the Criminal Sentencing Reform Act of 1989. T.C.A. § 40-35-302(d). The court should not impose such percentages arbitrarily. T.C.A. § 40-35-302(d).

*State v. Creasy*, 885 S.W.2d 829, 832-33 (Tenn. Crim. App. 1994) (citations omitted).

capability or capacity for following the law, so I find the single mitigating factor in this case.

　　　　With regard to aggravating factors, my reading of the law, [Defense Counsel], indicates to me that you are correct with regard to your analysis about more than one victim; however, I do believe that the [Appellant] did, in fact, abuse a position of trust when he committed these offenses. I do believe that I am required to consider the fact that there was more than one victim; that more than one victim is involved in the sentencing today. I do believe that I am required to consider the ages of the victims. Even through these are crimes that are age specific, there are differences among age differences, and so I find that the aggravating factor of abuse of position of trust exist [sic].

　　　　I find that due to the nature of the way in which that position of trust was violated repeatedly over many, many months, that that aggravating factor significantly outweighs the mitigating factor in this case.

Notwithstanding the Appellant's reliance on the somewhat ambiguous statement of the trial court regarding multiple victims and the age of the victims, the record clearly demonstrates that the trial court found only one enhancement factor applicable in this case: "[t]he defendant abused a position of public or private trust . . . ." *See* T.C.A. § 40-35-114(14). Moreover, the trial court clearly found that this enhancement factor significantly outweighed the single mitigating factor found by the court.

Although only one enhancement factor was applicable in this case, the weight assigned to that factor "is left to the discretion of the trial court so long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record." *State v. Gosnell*, 62 S.W.3d 740, 750 (Tenn. Crim. App. 2001) (citing *State v. Moss*, 727 S.W.2d 229, 238 (Tenn. 1986); *State v. Leggs*, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); T.C.A. § 40-35-210 Sentencing Comm'n Comments). It is unclear from the record whether the Appellant was sentenced under the 1989 Sentencing Act as it existed in 2004 or under the post-2005 amendments.[3] Nonetheless, our supreme court has held that, under the 1989 Sentencing Act, upon the finding of even one enhancement factor, "the statute affords to the judge discretion to choose an appropriate sentence anywhere within the statutory range." *State v. Gomez*, 163 S.W.3d 632, 659 (Tenn. 2005). Additionally, effective June 7, 2005, the Tennessee General Assembly, in response to the United States Supreme Court case of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), amended Tennessee Code Annotated sections 40-35-102, -210, and -401 to reflect the advisory nature of enhancement factors. *See* 2005 Tenn. Pub. Acts ch. 353, §§ 1, 6, 8. The 2005 amendment deleted appellate review of the weighing of the enhancement and mitigating factors, as it rendered the enhancement and mitigating factors merely advisory, not binding, on the trial courts. Accordingly, irrespective of which sentencing provision was employed for each of the Appellant's convictions,

---

[3]Six of the Appellant's sexual battery convictions were committed prior to June 7, 2005, and ten sexual battery convictions (including the single aggravated sexual battery conviction) were committed after June 7, 2005.

the record demonstrates proper consideration of the enhancement and mitigating factors by the trial court. The Appellant concedes that the only enhancement factor applied in this case was applicable. We conclude that the trial court's enhancement to the maximum number of years within the range for each conviction was justified. Accordingly, the Appellant's argument is without merit.

## II. Consecutive Sentencing

The Appellant argues that "the consecutive sentences ordered by the trial court were excessive when considering all the facts and circumstances of this case . . . ." The State responds by noting that the trial court based its decision regarding consecutive sentencing on the following statutory criteria:

> (b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:
> . . . .
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope or the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

T.C.A. § 40-35-115(b)(5) (Supp. 2005). The State contends that the record supports the trial court's decision on this issue. We agree.

The Appellant, presumably referring in part to the holding of *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995), asserts: "In order to impose consecutive sentences . . . proof must also show that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the [Appellant]." This argument is misplaced. In *State v. Lane*, a case in which consecutive sentencing was imposed pursuant to Tennessee Code Annotated section 40-35-115(b)(5), our supreme court clarified the limits of the *Wilkerson* holding as follows:

> As previously noted, the Sentencing Act sets forth the categories of offenders eligible for consecutive sentencing. *See* Tenn. Code Ann. § 40-35-115. The Act also includes general principles of sentencing which trial courts must consider in determining the length of a defendant's sentence. The relevant provisions are that the length of the sentence must be "justly deserved in relation to the seriousness of the offense"[] and "should be no greater than that deserved for the offense committed."[]

> In *Wilkerson*, the defendant satisfied the statutory definition of a "dangerous offender" under Tenn. Code Ann. § 40-35-115 (b)(4).[] *Id.* at 937-38. However, the facts of that case did not support the consecutive confinement imposed.[] We thus

concluded that satisfying the definition of subsection 115(b)(4), was not, in and of itself, "sufficient to sustain consecutive sentences." *Id.* at 938. Under the Sentencing Act, there must also exist "particular facts" which show that consecutive sentencing is "reasonably related to the severity of the offenses" and serves to protect society "from further . . . aggravated criminal conduct." *Id.* In order to limit the use of the "dangerous offender" category to cases where such "particular facts" exist, this Court held that sentencing courts must make specific findings regarding the severity of the offenses and the necessity to protect society before ordering consecutive sentencing under Tenn. Code Ann. § 40-35-115(b)(4). *Id.* at 939.

The requirement that a court make these specific findings before imposing a consecutive sentence on a "dangerous offender" arises from the fact that of all of the categories for consecutive sentencing, the dangerous offender category is the most subjective and hardest to apply. Section 40-35-115(b)(5) on the other hand, is illustrative of the self-contained limits found in the other categories for consecutive sentencing. Under subsection 115(b)(5), before the perpetrator of more than one sexual offense against a minor can be exposed to consecutive sentencing, the court must consider the previously discussed aggravating circumstances. Thus, by definition, Tenn. Code Ann. § 40-35-115(b)(5) is limited to those defendants whose conduct justifies extended confinement under the principles of the Sentencing Act. Accordingly, the Court of Criminal Appeals correctly held that *Wilkerson* is limited to cases involving consecutive sentencing of "dangerous offenders." Consequently, the trial court did not err in ordering consecutive sentencing in this case.

3 S.W.3d 456, 460-61 (Tenn. 1999) (footnotes omitted).

The trial court made the following findings in support of its decision to impose consecutive sentences:

Clearly, we're talking about two or more statutory offenses involving sexual abuse of minors.

As I read the law, the statute, I am required to inquire into the nature of the relationship, which we have already – a determination is one of trust. I'm required to determine whether or not manipulation existed, which did. I'm required to inquire into the nature of the relationship – inquire into the nature of the time period involved and I'm required to inquire into the extent of residual mental damage to the victims. I'm required to inquire into the nature and scope of the sexual acts involved.

I do not find from the [Appellant]'s testimony that an indication that he is accepting responsibility. I thought I heard him actually, in at least an indirect if not direct way, blame one of these victims. I think the term he used was "[c]oming onto

him," and the [Appellant] claimed that he should be responsible for not saying no, in effect. That was my interpretation of what he said.

. . . .

I do find . . . that consecutive sentences are appropriate in this case.

In M.T.'s victim impact statement, he attested that "ever since [the offenses] happened . . . [he could] not trust anyone" and that he has "lots of anger, and also anxiety attacks, loss of self esteem[,]" and nightmares. M.T. stated that the Appellant bought him cigarettes and "dip" in exchange for his secrecy regarding the sexual activity. M.T. further stated that he had to change schools because it hurt him "to know that other kids knew what had happened to [him]." M.T. also reported that he started seeing a psychiatrist and taking medication to help cope with his anger and anxiety. M.T.'s parents, in their statements, corroborated these characterizations of M.T.'s mental anguish, and they additionally stated that they "trusted [the Appellant] with [their] business affairs and even the welfare of the children he molested." In the victim impact statement by R.G.'s father, he stated that R.G. appeared to be ashamed and sad and that his grades in school had suffered. He further described the behavior of the Appellant, who was a friend of the family, as deceitful, in that the Appellant "performed oral sex [on the victim] during the work day" while other family members and customers were in the building. The Appellant's psychosexual evaluation included within the presentence report provided that the Appellant "had multiple excuses for his behavior," that there were "clear indications of a tendency to justify the current sexual behavior," and that the Appellant tended to view himself as the victim in the current situation. The Appellant's testimony at sentencing also supports the trial court's finding that he attempted to divert blame for his own conduct to one of the victims.

After review, we conclude that the record supports the findings of the trial court on this issue and that the trial court followed the statutory sentencing procedure and gave due consideration and proper weight to the factors and principles that are relevant to sentencing. Accordingly, we do not disturb the trial court's decision to impose consecutive sentencing. The Appellant's argument is without merit.

**CONCLUSION**

Based upon the foregoing, the judgments of the Humboldt Law Court for Gibson County are affirmed.

_____
DAVID G. HAYES, JUDGE

-8-