# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 21, 2008

## STATE OF TENNESSEE  v. CARL JUNIOR FRITTS

**Direct Appeal from the Circuit Court for Rhea County**
**No. 16380      J. Curtis Smith, Judge**

---

**No. E2007-02183-CCA-R3-CD   Filed October 9, 2008**

---

The defendant, Carl Junior Fritts, appeals the sentencing decision of the Rhea County Circuit Court. Following his guilty pleas to four counts of burglary (Class D felony), vandalism over $1000 (Class D felony), and evading arrest (Class E felony), the trial court imposed an eight-year sentence for each Class D felony conviction and a four-year sentence for the Class E felony. The court further ordered that all sentences be served concurrently with the exception of the vandalism conviction, which was to be served consecutively, resulting in an effective sentence of sixteen years. On appeal, the defendant contends that the trial court erred by: (1) imposing the maximum sentence within the range for each conviction, and (2) imposing partial consecutive sentencing. Following review of the record, we conclude that the trial court did not err and affirm the sentences as imposed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Philip A. Condra, District Public Defender, and B. Jeffery Harmon and Mechelle Story, Assistant Public Defenders, for the appellant, Carl Junior Fritts.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; James Michael Taylor, District Attorney General; and James W. Pope, III, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

The facts of the case, as established at the guilty plea hearing, are as follows:

[I]f the State went to trial in this case they would be calling . . . Mr. Eric Ewton, at the time was an officer with the Rhea County Sheriff's Department, who would testify

that on October 25, 2004, he was patrolling up north of Spring City on Highway 27 here in Rhea County, when he observed at . . . 2:30 a.m., a vehicle coming out from behind a drywall company, which is right next door to a storage facility that holds - - people rent storage units. He saw this vehicle that seemed suspicious coming out at 2:30 in the morning when it was a closed business. He pulled in to talk to this individual. [The defendant] was the operator of that vehicle, and the only one in the vehicle. He talked to [the defendant], [the defendant] stated that he'd just basically urinated behind the building, which didn't make sense. He asked [the defendant] where he was going. Said he was headed home up in Roane County. Didn't make a lot of sense - - well, (1), he was trespassing, and (2) he was on the southbound side of the road when he actually was heading in the northbound direction, plus he had just passed through Spring City where he could have used the restroom at the local Rocky Top store.

So he said, Wait just a second, and he was going to pull - - they were sitting side by side in the vehicle, in each other's vehicles, and he was going to pull around behind the vehicle so he would look at the tag and run the tag on it, and when he pulled around [the defendant] took off in his vehicle and started heading north on Highway 27.

He turned on his blue lights and gave chase. They got up to rates of 115 miles per hour. Chased him on into Roane County some six, seven miles up to Roane County. Turned off, I believe, on a road just as you get into Roane County, on an old road, and he actually lost him for a few minutes. Then he came upon him with his vehicle lights out and he started up, took off again. Chased him. Then at one point he abandoned the vehicle and took off on foot and then he lost [the defendant].

There in the vehicle were - - actually [the defendant] left his checkbook. He left his GED diploma. He left items that would identify him. Also he left numerous items in this vehicle that was - - it was also registered to him - - numerous items that came out of this stolen - - stolen items out of a storage unit.

Back at the storage unit, the officers went and checked it out. They found a fence that was cut, a hole. There was a fence around the storage unit. There was a hole cut in it. The wire cutters that were found in [the defendant's] vehicle, they were little pieces of a chain link fence that they collected. They found numerous - - 17 storage units that had damage done to the doors or broken into.

As to Count One, Mr. Gary Yates would testify that he had storage unit No. 23, and that that unit was broken into and taken from it were numerous items, including tool set collections, knife collections, so forth, over the value of $1,000.

As to Mr. Anthony Roberts in Count Three, he would testify that he had unit six and that his was broken into and items under $500, including a 50-caliber muzzle loader and Reebok bag, were taken.

As to Count Five, Ms. Nadine Culbertson would testify that she had unit nine that was broken into and a blue bounce-around was stolen without her permission.

Then Count Seven you would have Don Hartman testify that he had unit 15, and it was broken into and items including several Craftsmen tools were taken without his permission.

All these victims would say that these items were taken - - broken into and taken without their permission.

Furthermore, the owner, it's called Rhode Storage, the owner, Jimmy Rhodes, would testify as to Count 22, that he had some 17 units that were damaged, the locks were damaged, or locks were either cut off or damaged. The doors were damaged and had to be replaced. Also the fence was cut, causing damage, and basically it amounted to vandalism over $1,000, but less than $10,000.

[The defendant] was later picked up by the Roane County authorities, brought back to Rhea County. Officer Mike Owenby would testify that he did an interview with [the defendant] in which he gave a written statement and which he did admit to going into the several storage units and taking the stuff and then fleeing from the officers.

I believe basically that would be the proof in this case. Also the officer would testify that he was chasing [the defendant] at 115 miles an hour, said they passed several folks on the road, putting them all in danger.

Based upon these actions, a Rhea County grand jury returned indictments against the defendant in two separate cases, which were later merged. In Case No. 16380, the defendant was charged with seventeen counts of burglary, three counts of theft under $500, one count of theft over $10,000, and one count of vandalism over $1,000. In Case No. 16381, he was charged with one count of felony evading arrest and one count of reckless endangerment. Pursuant to a plea agreement, the defendant pled guilty to four counts of burglary, one count of vandalism over $1,000, and felony evading arrest. The agreement specified that the remaining charges were to be dismissed and that the trial court was to determine the length and manner of service of the sentences to be imposed. A sentencing hearing was subsequently held, but no testimony was presented. The presentence report was admitted as evidence and indicated that the defendant has numerous prior convictions. Following the hearing, the trial court imposed eight-year sentences, as a Range II offender, for each of the burglary and vandalism convictions and a four-year sentence for the evading arrest conviction. The court further ordered that the burglary and evading arrest convictions be

served concurrently to each other but consecutively to the vandalism conviction, resulting in an effective sentence of sixteen years. The defendant timely appealed the court's sentencing decision.

**Analysis**

On appeal, the defendant contends that the trial court erred in imposing the maximum sentence within the range for each conviction and, further, erred in imposing partial consecutive sentencing. Initially, we note that the offenses for which the defendant was convicted occurred on October 25, 2004. However, he was not sentenced until May 30, 2007. Effective June 7, 2005, the Sentencing Act was amended in response to *Blakely v. Washington*. *See* T.C.A. § 40-35-210(c) (Supp. 2005); *cf.* T.C.A. § 40-35-210(c) (2003). In the "Compiler's Notes" section to this amendment, it states:

> Acts 2005, ch. 353, § 18 provided that the act shall apply to sentencing for criminal offenses committed on or after June 7, 2005. Offenses committed prior to June 7, 2005, shall be governed by prior law, which shall apply in all respects. However, for defendants who are sentenced after June 7, 2005, for offenses committed on or after July 1, 1982, the defendant may elect to be sentenced under the provisions of the act by executing a waiver of such defendant's ex post facto protections. Upon executing such a waiver, all provisions of the act shall apply to the defendant.

T.C.A. § 40-35-210 (Supp. 2005) Compiler's Notes. In the instant case, the defendant did not execute a waiver of his *ex post facto* provisions. Thus, the 2005 amendments to Tennessee Code Annotated section 40-35-10 do not apply to the defendant. Therefore, we review the trial court's imposition of the sentences in this case pursuant to the former act, as modified by *State v. Gomez*, 239 S.W.3d 733 (Tenn. 2007) ("*Gomez II*").

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. *See* T.C.A. § 40-35-401 (2003), Sentencing Comm'n Cmts. When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely *de novo* without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). When conducting a *de novo* review of a sentence, we must consider: (1) any evidence received at the trial and/or sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancement factors; (6) any statements made by the defendant on his or her own behalf; and (7) the potential for rehabilitation or treatment. T.C.A. § 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

## I. Length of Sentence

First, the defendant contends that the trial court erred in imposing the maximum sentence for each of his convictions. Under the law as it existed before the 2005 amendments, unless enhancement factors were present, the presumptive sentence to be imposed was the minimum sentence within the range for a Class D or E felony. T.C.A. § 40-35-210(c) (2003). As the defendant was sentenced as a Range II offender, the appropriate ranges were four to eight years for the Class D felonies and two to four years for the Class E felony. T.C.A. § 40-35-112(b)(4), (5) (2003). Tennessee's pre-2005 sentencing act provided that the trial court was to increase the sentence within the range based on the existence of enhancement factors and then reduce the sentence as appropriate for any mitigating factors. T.C.A. § 40-35-210 at (d), (e).

The Tennessee Supreme Court, however, recently held that a trial court's enhancement of a defendant's sentence based on factors that had not been found by a jury beyond a reasonable doubt violated the defendant's Sixth Amendment right to a jury trial as interpreted by the United States Supreme Court. *Gomez*, 239 S.W.3d at 740 (*Gomez II*) (citing *Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856, 860 (2007)); *see also Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 2536 (2004) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000)) ("'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"). In this case, the trial court found only the presence of one enhancement factor, that being that the defendant had a previous history of criminal convictions. The finding of that factor does not violate the holdings of *Gomez* or *Blakely*, and we find no error in its application.

Although only one enhancement factor was applicable in this case, the weight assigned to that factor "is left to the discretion of the trial court so long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record." *State v. Gosnell*, 62 S.W.3d 740, 750 (Tenn. Crim. App. 2001); T.C.A. § 40-35-210, Sentencing Comm'n Cmts. Moreover, our supreme court has held that, under the 1989 Sentencing Act, upon the finding of even one enhancement factor, "the statute affords to the judge discretion to choose an appropriate sentence anywhere within the statutory range." *State v. Gomez*, 163 S.W.3d 632, 659 (Tenn. 2005).

After review of the record, we conclude that the maximum sentence within the range was justified in this case. The trial court considered the applicable principles of sentencing and all relevant facts and circumstances of the case. As noted by the trial court, the forty-two-year-old defendant had more than sixty prior convictions on his record. Application of the enhancement factor was clearly justified, and we find no abuse of discretion in the weight given to the factor by the court. Accordingly, the defendant's argument is without merit.

## II. Consecutive Sentencing

Next, the defendant contends that the trial court erred in ordering that his sentence for the vandalism conviction be served consecutively to his burglary and evading arrest convictions. In support of his argument, he relies upon the fact that his record is devoid of any violent offenses, that his prior history occurred in three "groupings" of time, and that he successfully completed parole twice. According to the defendant, who does concede he had "previous convictions," "he is not a dangerous offender and not a threat to the public and his offenses were not aggravated in nature." He stated that "it would be in the best interest of society that the length of the [d]efendant's sentences be reduced and concurrent sentences imposed for [d]efendant's non-threatening crimes." We disagree.

Our consecutive sentencing statute provides, in relevant part, that consecutive sentencing may be imposed if the trial court finds, by a preponderance of the evidence, that the "defendant is an offender whose record of criminal activity is extensive." *See* T.C.A. § 40-35-115(b)(2) (2003). Additionally, the length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved" under the circumstances. T.C.A. § 40-35-102(1), -103(2) (2003). Whether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court. *State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999).

Initially, we are constrained to note that the defendant's argument, presumably referring to the holding of *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995), that the "proof must also show that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender" is misplaced. In *State v. Lane*, our supreme court clarified the limits of the *Wilkerson* holding and concluded that it was limited to cases involving consecutive sentencing of "dangerous offenders." *State v. Lane*, 3 S.W.3d 456, 460-61 (Tenn. 1999).

In this case, the trial court did not find the defendant to be a dangerous offender but rather found that he had an extensive criminal history, noting that the defendant "has in excessive [sic] of 60 convictions, more than 40 of which are felony convictions. His first convictions were at the age of 18 and while his criminal acts consist of several 'clusters' of activity, criminal activity has continued throughout his adult life. The vast majority of convictions relate to theft offenses and he had been previously sentenced to the Tennessee Department of Correction."

Review of the record in this case reveals no abuse of discretion, as the record overwhelmingly supports the trial court's imposition of consecutive sentencing in this case. The presentence report reveals that the defendant, since the age of eighteen, has been convicted of forty-six felonies and nineteen misdemeanors. Despite the defendant's argument to the contrary, we fail to see how this could not be considered an extensive criminal history, regardless of whether the crimes were violent in nature. Because the court followed the statutory sentencing procedure and gave due consideration and proper weight to the relevant sentencing factors and principles, we will not disturb the decision to impose consecutive sentencing.

## CONCLUSION

Based upon the foregoing, the sentences imposed by the Rhea County Circuit Court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE