IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 19, 2017

## STATE OF TENNESSEE v. YANGREEK TUT WAL

**Appeal from the Criminal Court for Davidson County**
**No. 2012-C-1981     Cheryl Blackburn, Judge**

_____

### No. M2016-01672-CCA-R3-CD

_____

The defendant, Yangreek Tut Wal, appeals his Davidson County Criminal Court guilty-pleaded convictions of especially aggravated kidnapping and especially aggravated robbery, claiming that his 40-year effective sentence is excessive. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Joshua L. Brand, Nashville, Tennessee, for the appellant, Yangreek Tut Wal.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Megan King, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Originally charged with two counts of especially aggravated kidnapping, two counts of especially aggravated robbery, and four counts of aggravated rape, the defendant pleaded guilty to two counts each of especially aggravated kidnapping and especially aggravated robbery in exchange for dismissal of the aggravated rape charges. The plea agreement provided for the sentence to be determined by the trial court and included the State's promise to recommend concurrent alignment of all the sentences should the defendant testify truthfully against co-defendants Tut Tut and Peterpal Tutlam.

At the April 12, 2013 guilty plea submission hearing, the State offered the following statement of facts:

If this case had gone to trial, the State's proof would be that on March the 17th of 2012 [the defendant] and Mr. Duol Wal and Mr. Tut Tut and Mr. Peter Pal Tutlem (phonetic) were together in the early morning hours, and they accosted the two victims in this case [R.W.] and [P.T.], outside [R.W.'s] residence.[1] And they abducted them and forced them to get into a vehicle at knifepoint. In the vehicle they demanded their property. They demanded their bank cards and their PIN numbers. They drove to a Regions Bank where they got an amount of money out of both persons' accounts. They also with the knife repeatedly stabbed [R.W.] and [P.T.] in the legs, arms, and face. They forced [R.W.] and [P.T.] to perform oral sex on each other. They made them take off their clothes, and they forced them out of the car naked.

The victims sought help immediately. Police were able to get the video or still photographs from the ATM. [The defendant] was the one that went to the ATM and got the money. He was able to be identified, which led to his brother, Duol Wal. The police went to their residence. They found the car that was used that had quite an amount of blood in it, although, they had attempted to clean it up. They found items in the trash can that belonged to the victims that were bloody. They found items in Mr. Duol Wal's room, including the knife that was used to stab the men. They found money, they found property that belonged to the two victims.

[The defendant] and Mr. Peter Pal Tutlem fled the jurisdiction to Nebraska where [the defendant] was arrested there. He . . . was caught there and interviewed by the detectives in Nebraska and then ultimately by Detective Dozier that went out there. He admitted what had happened. He named the people that were involved. He maintained that he was the driver of the vehicle that had no role in the sexual part of this case. All of these events occurred here in Davidson County.

The trial court accepted the defendant's plea.

---

[1] In keeping with the policy of this court, we endeavor to protect the anonymity of the victims of sexual assault.

Nearly three years later, the State filed a motion seeking consecutive sentencing based on the defendant's being a dangerous offender. In its motion, the State recounted false statements provided by the defendant to the police and attempts made by the defendant during Mr. Tutlam's trial to minimize Mr. Tutlam's participation in the offenses.

At the defendant's sentencing hearing, which was conducted on April 6, 2016, and July 13, 2016, Metropolitan Nashville Police Department ("Metro") Detective Brandon Dozier testified that he traveled to Nebraska to interview the defendant following his arrest. Detective Dozier also interviewed the defendant after he was returned to Tennessee. Initially, the defendant did not disclose that Mr. Tutlam had participated in the offenses. When he finally disclosed that Mr. Tutlam was present during the offenses, he provided the police with the name Chudier Timothy instead of Mr. Tutlam's given name and maintained that Mr. Tutlam had remained in the car and had not participated in the attack on the victims. Despite initially indicating that each of the perpetrators, including Mr. Tutlam, had split the proceeds of the robbery, the defendant testified at Mr. Tutlam's trial that Mr. Tutlam did not take a share of the money. Additionally, the defendant testified at Mr. Tutlam's trial that Mr. Tutlam was intoxicated during the offenses and that Mr. Tutlam had chastised the other perpetrators for what they had done to the victims. Detective Dozier testified that the defendant did not provide any "new" information that "helped discover who Peterpal Tutlam was."

During cross-examination, Detective Dozier acknowledged that the defendant had maintained consistently throughout the proceedings that Mr. Tutlam did not participate in the attacks on the victims. Detective Dozier also conceded that the defendant had assisted him and the assistant district attorney general by translating from Nuer to English the audio recordings of calls placed from the jail.[2] Detective Dozier could not recall whether the information gleaned from those calls had assisted in the apprehension of Mr. Tutlam in Mankato, Minnesota.

Peggy Fitzpatrick testified that she met the defendant's family in 1995 or 1996 when they were members of a church pastored by her husband. She lost touch with the family after the defendant's father died in 2005. By that time, the family had moved from Nashville to Gallatin and then to Antioch. Ms. Fitzpatrick was advised of the crimes by a family friend whose son was a friend of the victims. She said that she reached out to the defendant via letter following his incarceration and that the two had been exchanging letters approximately every four months. She described the defendant

---

[2]    Nuer is "an Eastern Sudanic language of the Nilo-Saharan language family" spoken by the Nuer people "who live in the marsh and savanna country on both banks of the Nile River in South Sudan." *See* https://www.britannica.com/topic/Nuer (last visited May 15, 2017).

as a "fun loving" and "very sweet child" who had "a great deal of capacity to have accomplished something."

Defense counsel recounted to the court that the defendant had cooperated with the State following the entry of his plea by having conversations with Mr. Tutlam and then interpreting the recorded conversations for the benefit of the assistant district attorney and the police.

During his unsworn allocution, the defendant expressed regret for his role in the offenses and asked the victims for forgiveness. He told the court that he was "not that same person who committed that crime back in 2012" and asked the court "for a second chance."

At the conclusion of the hearing, the State highlighted portions of the defendant's testimony during Mr. Tutlam's trial that were in direct conflict with the testimony offered by the victims. The State asked the court to enhance the defendant's sentences based upon his prior criminal history, his leadership role in the offenses, the exceptionally cruel treatment of the victims, and the severity of the injuries inflicted on the victims. *See* T.C.A. § 40-35-114(1)-(2), (5)-(6). The State advocated for consecutive alignment of the sentences based upon the defendant's failure to testify truthfully. The State argued that consecutive sentencing was appropriate because the defendant qualified as a dangerous offender. The defendant asked the court for leniency, arguing that the defendant had assisted the authorities in apprehending Mr. Tutlam, that he had acted under duress, that the defendant had a non-violent role as the driver in the offenses, that the defendant had no prior criminal history, and that the defendant testified against Mr. Tutlam as the State had requested. The defendant also asked that the trial court take into consideration the comparatively lenient 30-year sentences imposed upon co-defendants Duol Wal and Tut Tut, noting that their role was far more significant in the offenses than the defendant's.

In arriving at the 20-year sentence imposed for each of the defendant's convictions, the trial court gave slight weight to the defendant's history of misdemeanor convictions and great weight to the gravity of the injuries inflicted upon the victims in what was an exceptionally cruel series of events. The trial court gave some weight to the defendant's having assisted the police and having testified at Mr. Tutlam's trial. The court agreed to take into consideration the sentences imposed on the co-defendants but cautioned the defendant that it would not have imposed such lenient sentences given the reprehensible nature of the offenses.

With regard to sentence alignment, the trial court agreed with the State that the defendant was a dangerous offender whose behavior indicated the defendant showed

no hesitation in committing a crime when the risk to human life was high. Based upon this finding, the court ordered that the 20-year sentences imposed for both convictions of especially aggravated kidnapping be served concurrently with each other, that the 20-year sentences imposed for the convictions of especially aggravated robbery be served concurrently with each other, and that the aggregate 20-year sentences imposed for both sets of convictions be served consecutively. The effective sentence is, therefore, 40 years, which must be served at 100 percent by operation of law.

In this appeal, the defendant argues that his sentence is excessive. He asserts that the trial court abused its discretion by imposing a sentence far in excess of that imposed on two of the co-defendants. He also contends that the trial court erred by finding him a dangerous offender without making the requisite statutory conclusions to support that finding. The State avers that the sentence is appropriate.

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

With respect to consecutive sentencing, our supreme court has held that the standard of review adopted in *Bise* "applies similarly" to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). In *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995), the supreme court imposed two additional requirements for consecutive sentencing when the "dangerous offender" category is used: the court must find that consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. *Id.* at 937-39; *see State v. Imfeld*, 70 S.W.3d 698, 707-08 (Tenn. 2002).

-5-

Here, the record reflects that the trial court, in sentencing the defendant, considered all appropriate principles set forth in Code section 40-35-210(b). The court applied enhancement factors based upon the defendant's criminal history, role in the offense, and the exceptionally cruel nature of the offenses as well as the gravity of the injuries inflicted on the victims. The court applied mitigating factors based upon the defendant's cooperation with the police, his letting the victims go voluntarily, and his testifying against Mr. Tutlam. Because the trial court considered all relevant principles associated with sentencing, we cannot say that the trial court erred by imposing a mid-range sentence for each of the defendant's convictions.

With regard to sentencing alignment, the trial court based its imposition of partially consecutive sentencing on the finding that the defendant was a dangerous offender. *See* T.C.A. § 40-35-115(b)(4). In making this finding, the trial court stated as follows:

> I'm going to find that he is a dangerous offender whose behavior indicates little or no regard for human life and has no hesitation about committing a crime with which the risk to human life is high. I think that is definitely made out by this proof. Some of the others, he was participating in this, he's criminally responsible for what everybody else did. And there is no way you can look at the facts of this case and not find a dangerous offender, the damage that was to the victims, the stabbings, and the stomping of the head for absolutely no reason as well as the threats to kill, leaving them out in the dark with no clothes on was beyond dangerous. So I also need to determine that the consecutive sentences are based on that the aggregate term reasonably relates to the severity of the offenses. And it's necessary to protect the public from further serious conduct by the defendant.

The trial court made the appropriate statutory findings as set forth in Code section 40-35-114(4) as well as both requisite *Wilkerson* findings: that the sentencing "relate[d] to the seriousness of the matter" and that the extended sentence was "necessary to protect the public against further criminal conduct." *See Wilkerson*, 905 S.W.2d at 937-39. Under these circumstances, the trial court did not abuse its discretion by imposing partially consecutive sentences.

Finally, the defendant claims that his sentence is erroneous because it exceeds that imposed upon two of his co-defendants. Although "[o]ur sentencing act is

designed to eliminate unjustified disparity in sentencing and provide for consistent treatment of defendants," "each defendant must be viewed individually with regard to the enhancing and mitigating factors applicable to that defendant." *State v. Gosnell*, 62 S.W.3d 740, 750 (Tenn. Crim. App. 2001) (citations omitted). In *State v. King*, our supreme court considered King's argument "that the record inadequately demonstrates the reasons for the length of her sentences which, she claims, is disproportionate to those of her co-defendants, thereby violating the requirement 'to assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing and providing a fair sense of predictability of the criminal law and its sanctions[.]'" *State v. King*, 432 S.W.3d 316, 321 (Tenn. 2014) (quoting T.C.A. § 40-35-102(2) (2010)). The court concluded that "[b]ecause the trial court placed its reasons for the imposition of an effective five-year sentence on the record, the presumption of reasonableness prevails" and that, despite that King received sentences greater than those imposed on her co-defendants, the trial court did not abuse its discretion because "the sentences imposed by the trial court were within the applicable statutory ranges and the record sufficiently reflects the trial court's consideration of the purposes and principles of sentencing." *Id.* at 322.

As indicated, the trial court placed on the record the reasons for the imposition of mid-range sentences for each conviction as well as the reasons for its decision to order partially consecutive alignment of those sentences. The record fully supports those sentencing decisions.

Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE